[S. F. No. 15720. In Bank.—August 27, 1936.]

GERTRUDE V. CLARK, Petitioner, v. FRANK C. JOR-DAN, as Secretary of State, etc., Respondent.

Jesse H. Steinhart and B. J. Feigenbaum for Petitioner.

Frank P. Doherty and Frank L. Guerena, as *Amici Curiae* on Behalf of Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

O. K. Cushing and Clarence E. Todd, as *Amici Curiae* on Behalf of Respondent.

WASTE, C. J.—According to the allegations in the petition filed herein, the respondent Secretary of State has received a petition, purporting to be an initiative measure to be submitted directly to the electors of the state at the next general election to be held November 3, 1936. Unless this court orders otherwise, the respondent will so submit the measure. Petitioner seeks a peremptory writ of mandate commanding the Secretary of State not to submit the proposed initiative measure to the electors.

At the hearing, and in the briefs filed, two grounds for the issuance of the writ were considered. First, it is contended that the petition was not duly qualified for filing, in that it was not supported by the number of signatures required by law; and, second, that there does not appear across the top of each page after the first page of the petition a "short title" showing the nature of the petition and the subject to which it relates, as required by section 1197b of the Political Code. Both of these grounds of opposition to the submission of the purported measure to the electors have been seriously considered but, as the court has reached the conclusion that the peremptory writ must issue on the second ground of opposition stated, further consideration will not be given to the alleged insufficiency of the signatures attached to the petition.

Section 1197b of the Political Code requires that "Across the top of each page after the first page of every initiative, referendum or recall petition or section thereof which may be prepared and circulated in accordance with law, there shall be printed in eighteen-point gothic type a short title, in not to exceed twenty words, showing the nature of the petition, and the subject to which it relates." The reason for this requirement has but recently been given by this court: "Its purpose is to throw additional safeguards around the operation of the initiative law. Its design is to give to the elector additional information other than that afforded by the Constitution as to the nature of

the petition which he is asked to sign. No elector can intelligently exercise his rights under the initiative law without a knowledge of the petition which he is asked to sign, and any legislation which will increase the facilities of the elector to acquire such information is well within the terms of the Constitution permitting the enactment of legislation to facilitate the operation of this provision of the Constitution.'' (*Boyd* v. *Jordan,* 1 Cal. (2d) 468 [35 Pac. (2d) 533]. See, also, what this court said in *Wallace* v. *Zinman,* 200 Cal. 585, 592 [254 Pac. 946, 62 A. L. R. 1341].) In *California Teachers Assn.* v. *Collins,* 1 Cal. (2d) 202 [34 Pac. (2d) 134], it was held that a substantial compliance with section 1197b was all that was required. It was also held that ''the requirements of both the Constitution and the statute are intended to and do give information to the electors who are asked to sign the initiative petitions.'' (See, also, *Hunt* v. *Jordan,* 139 Cal. App. 200 [36 Pac. (2d) 828].)

The question squarely arises whether the purported ''short title'' here in question substantially complies with the requirements of the code section. We are of the opinion that it does not.

The ''short title'' used on the proposal here under consideration is as follows:

''CERTAIN SALES TAXES FORBIDDEN—CERTAIN TAX LIMITATIONS RESCINDED—CERTAIN HOME-STEAD IMPROVEMENTS AND, PROGRESSIVELY, IMPROVEMENT AND TANGIBLE PERSONAL PROPERTY TAXES ABOLISHED.'' Such a title indicates that the proposed act intends to abolish certain types of taxes and to rescind certain tax limitations. An examination of the proposal demonstrates that in addition to these purposes the proposal also is a tax measure, concerning which purpose the title is wholly silent.

An analysis of the proposal indicates that it proposes to amend certain provisions of the Constitution so as to accomplish the following:

1. It repeals *all* sales taxes passed by the state or any ''subordinate jurisdiction'' since January 1, 1933.

2. It places in the Constitution a prohibition against ''any new sales tax in whatever guise'' in the future.

3. It removes from the Constitution the present restrictions on taxes on real and personal property.

4. It immediately exempts from taxation improvements included within any homestead up to an assessed valuation of $1,000.

5. Over a period of five years, at the rate of 20 per cent a year, it reduces taxation upon tangible personal property, and upon improvements on land now imposed by counties, cities and other taxing districts, and at the end of five years prohibits any future taxation by any taxing agency of the state, including the state, on personal property or improvements. It also defines the term "improvements".

6. For the taxation abolished on personal property and improvements it requires that land value taxation be substituted.

It is quite clear that one of the major purposes of the proposal is to substitute land value taxation for the tax now imposed by cities and counties on tangible personal property and improvements on real property. The "short title" above quoted totally fails, directly or indirectly, expressly or impliedly, to indicate that the proposal is intended to work this major and natural change in the existing method of taxation—in fact the title fails to disclose that any new taxes of any kind are to be imposed. The title is carefully worded to indicate to a prospective signer that sales taxes are forbidden, that progressively taxation of personal property and improvements is abolished and that certain tax limitations are removed, but it totally fails to indicate that the proposal is also a taxing measure. Everything that possibly could induce electors to sign the proposal is carefully included in the short title, but the one thing that would cause them to hesitate—the imposition of new taxes on real property—was certainly excluded. As was stated in the oral argument, the "short title" includes "all the sweet and excludes all the bitter". Such a title is clearly misleading, and does not substantially comply with section 1197b of the Political Code.

In the Boyd case, *supra*, it was held that the "short title" there involved was defective in that it failed to disclose that the proposal was in fact a taxing measure. Everything that was said in that case is equally applicable here.

█ The contention made in the briefs and in the argument of *amici curiae* that the "short title" would indicate to an elector with "an inquiring mind" that since certain tax limitations are abolished, and certain taxes repealed or abolished, and would therefore cause such an elector to read the proposal before signing, is not convincing. The purpose of the "short title" is to inform the prospective signer of the general purpose of the proposal, and to protect him from being misled or imposed upon. A title which tells the prospective signer that certain taxes are abolished, without telling him that a portion of the abolished taxes are imposed on real property, is definitely misleading. █
While we are of the opinion that statutes dealing with the initiative should be liberally construed to permit the exercise by the electors of this most important privilege, we are also of the opinion that statutes passed for the purpose of protecting electors from confusing or misleading situations should be enforced.

Let the peremptory writ issue as prayed for.

Curtis, J., Langdon, J., Knight, J., *pro tem.*, Nourse, J., *pro tem.*, and Shenk, J., concurred.

SEAWELL, J. — I dissent. In my view the majority opinion reverses the rule of liberal construction which has heretofore been applied uniformly by this court to the end that the right to submit proposed legislation directly to the people should be preserved, and substitutes in its stead a strict rule of construction, which, if applied in the future, will mark a decisive step in the opposite direction from the course in which this court has been moving in its approach to the initiative system of lawmaking. Hyper-technical and captious reasons should not be regarded as affording sufficient ground for obstructing the electorate in putting into practical use the simple and direct method of legislation which the system was intended to afford. The right of appeal to the sovereign power for redress of grievances by petition is as old as the Declaration of Independence, and the right to initiate laws by petition is vouchsafed by the Constitution of the state, and proposed legislation should not be denied a place on the ballot unless it clearly and

unmistakably fails to comply with substantial and important requirements of the law.

The proposed initiative measure herein is set forth in full on the first page of the petition, stating exactly what amendments the measure proposes to make with respect to the subject of taxation of property. The attorney-general, as required by law, prepared a title and summary of the proposed measure, which occupies the first eight or nine lines at the top of said page one. His topical analysis of the measure contains approximately ninety words, and points out every change or amendment which the initiative measure proposes to make on the subject of property taxation. The proposed amendment follows the attorney-general's topical analysis and abridgment, and, of course, sets out the measure as proposed. At the top of the next page, and on every page following, the short twenty-word title—the least important of all, but which has been held to be so defective as to invalidate the entire proceeding—is set forth in large black capital letters, consisting of three lines, and containing exactly twenty words, in the following language: ''CERTAIN SALES TAXES FORBIDDEN—CERTAIN TAX LIMITATIONS RESCINDED—CERTAIN HOMESTEAD IMPROVEMENTS, AND, PROGRESSIVELY, IMPROVEMENT AND TANGIBLE PERSONAL PROPERTY TAXES ABOLISHED.'' Then follow ruled black lines for the signatures of the proponents of the measure. That words more nearly complying with the rule *multum in parvo* or which may have more correctly articulated the several propositions may have been chosen by a terminologist or one trained in drafting constitutional proposals, is not the question.

It was, we believe, the thought of the framers of the system which provides for the initiation of laws by petition that nothing more than a brief reference could or should be made in the use of twenty words allowed for the purpose of identifying the petition which was to be presented to the signers. No one will contend that the twenty-word title alone could afford even a ''summary of the chief purposes and points'' of the proposed measure (sec. 1197a, Pol. Code) which the attorney-general is required to prepare. In addition to the attorney-general's summary, the measure in full is required to be printed on the petition. In view of

these requirements it seems clear that the printing of twenty words at the top of each blank sheet reserved for signatures is required for identification and also for the protection of the signers against imposition or fraud. The purpose of the short title is made more apparent by its language: ''Across the top of each page after the first page . . . there shall be printed . . . a short title in not to exceed twenty words, showing the nature of the petition and the subject to which it relates.'' The nature of the petition is legislation by the system of initiative, and the subject to which it relates is *property taxation*. The short title does not pretend or purport to take the place of the attorney-general's summary, which must set out ''the chief *purposes* and *points* of said proposed measure''.

The theory of petitioner is that the twenty-word title should furnish the signers with certain information as to matters and details which can be obtained by reference to the proposed measure, or the attorney-general's summary, all of which are germane and relevant to the subject therein treated, to wit, taxation. The law does not contemplate that the signers will be wholly influenced by that which is meagerly set forth in the twenty-word or short title. The signer must have some advance knowledge of the proposed measure, or he will be unable in a great majority of cases to understand the significance of the short title, or appreciate its scope or its ''chief purposes and points''. In case the signer is not informed as to the contents or subject of the petition when presented the act has provided a ready method by which he may inform himself by an inspection of the attorney-general's summary, or by an inspection of the accompanying petition, which is set out in full, provided he is at all interested in the subject. No duty rests on anyone to sign a petition at the time it is presented, or at all. It cannot be contended that the twenty-word or short title placed at the top of each page of the petition should conform to the requirements of article IV, section 24, of the Constitution, which applies only to the titles of bills or acts submitted to the legislature for action. Even in such cases, however, great liberality has been indulged, to the end that the sufficiency of the title may be sustained and the act saved from the ban of the constitutional inhibition.

In illustration of the liberality which has been indulged in passing upon the short title, which is but a subtitle to the title prepared by the attorney-general, we have but to cite *Hunt* v. *Jordan,* 139 Cal. App. 200 [36 Pac. (2d) 828]. There the court actually and properly eliminated and indulged in the process of compounding two words in order to bring the short title within the twenty-word limitation. In *California Teachers' Assn.* v. *Collins,* 1 Cal. (2d) 202 [34 Pac. (2d) 134], certain words were disregarded as surplusage in order to bring the title to twenty words. Other cases in our jurisdiction might be added to the list if it was deemed necessary to multiply authorities. The case of *Boyd* v. *Jordan,* 1 Cal. (2d) 468 [35 Pac. (2d) 533], relied on by petitioner as sustaining her contention as to the insufficiency of the subtitle, and which presents a notable insufficient title, had to do with a short title not comparable to the title in the instant case, and, therefore, does not present a parallel case. Said title read: "Initiative Measure Providing for Adoption of Gross Receipts". It will be noted that the subject, taxation, in the above title, is not even referred to. In the instant title the subject—taxation as affecting taxable property—clearly appears. The measure deals with exemption of property now subject to taxation, and it was not necessary to describe or name in the short title property *not* included in the exemption, or to name the manner in which the tax would be spread upon property not exempt.

The observations of counsel for respondent in written and oral argument to the effect that on examination it would appear that the many petitions which have been filed with the Secretary of State and many others which have been presented to the appellate courts of the state would be subject to the same criticisms which are directed at the twenty-word title here involved, is well sustained by actual references to the record. By actual comparison many of such titles which have passed the inspection of the courts furnish far less information to the signer than is given by the title attacked.

But if the subtitle, or short title, is subject to the test made applicable to general titles as provided by article IV, section 24, state Constitution (which clearly cannot be done), it is not altogether certain that it would not measure

up fairly well to the standard by which some of said titles have been measured and found not wanting.

The main opinion in its criticism of the short title dissects the entire measure much in the way the attorney-general did in preparing his summary. The twenty-word title is not designed to be a compendium of the proposed measure. All that is necessary to be said therein is contained on the first page of the petition. It is true that the twenty-word title does not specifically make reference to or state in direct language that *land value taxation* shall be substituted in lieu of progressively decreasing taxes upon tangible personal property. Increased taxes on property not exempt must naturally result from exemptions made as to other designated kinds. It is not necessary to so state. If the revenues of government are reduced below the level necessary to carry on the business of the government by reason of the exemption of certain property from taxation, it inevitably follows that the deficiency will ordinarily have to be made up by increasing the rate of taxation on the remaining property not exempt from taxation. That is what the measure proposes to do in the instant case. The short title gives notice as to what property exemptions are to be made, and it is not called upon to set forth the mechanics by which it will be done, or the effect it will have on other related subjects. No new tax is proposed; an increased tax levy upon real property is certain to follow. The words of the title are sufficient to put a person on inquiry or notice. The first sentence is: "Certain Sales Taxes Forbidden." Can there be any doubt as to whether any person not informed as to the scope and purposes of the act would do just what the measure anticipates he would do, examine the attorney-general's title, or the act itself?

The next clause is "Certain Tax Limitations Rescinded". Does not the word "certain" as here used awaken in the mind of every person, the inquiry as to the relation of the word "certain" to the thing it refers to or qualifies? Does not its common use suggest the question "What tax limitations are rescinded?" Most assuredly it does. So we find the sentence, "Homestead Improvements, and, Progressively, Improvement and Tangible Personal Property Taxes *Abolished.*" It will be noted that in each one of the three sen-

tences the word *tax*, which is the subject of the proposed measure, appears at least once.

The main opinion opines that the measure was carefully drawn with the purpose of deceiving and misleading prospective signers. I know nothing as to what sinister motives, if any, may have lurked in the mind of the person who prepared said subtitle. Neither am I concerned with that issue nor with the merits of the proposed legislation. The title is placed before the reader in its exact form and must speak for itself. The only question in which I am interested is whether the short title is in all respects sufficient to withstand the attack to which it has been subjected. I am entirely satisfied that it is.

The first ground of opposition to the petition that it was not supported by the number of signatures required by law was not passed on by the main opinion, for the reason that its conclusion that the peremptory writ must issue on the second ground rendered it a moot question so far as the final result is concerned, and, therefore, no discussion of that question was necessary. I am of the opinion that the petition contained a sufficient number of names and was presented for filing and was filed in ample time to give it a place on the ballot.