[No. A036228. First Dist., Div. Two. Nov. 13, 1987.]

NICOLE MYERS et al., Plaintiffs and Appellants, v.
JAY PATTERSON, as Registrar of Voters, etc., Defendant and
Respondent.

132

**COUNSEL**

Arlo Hale Smith for Plaintiffs and Appellants.

Louise H. Renne, City Attorney, and Thomas J. Owen, Deputy City Attorney, for Defendant and Respondent.

## OPINION

SMITH, J.—The Elections Code requires that proponents of city initiative measures publish and file a "notice of intention" before circulating a signature petition (§§ 4002-4003) and that each section of the circulated petition bear a copy of the notice (§ 4004). (All statutory references will be to the Elections Code unless noted otherwise.)

Plaintiffs, proponents of a commercial rent control ordinance they sought to place on the November 1986 ballot in the City and County of San Francisco (city), failed to include the notice on their petition, and defendant Jay Patterson, the city's registrar of voters, rejected the petition on that basis. Plaintiffs unsuccessfully sought writ of mandate (Code Civ. Proc., § 1085) to compel defendant to accept and certify the petition, and this is their appeal from a superior court order denying a peremptory writ.

We will affirm.

## BACKGROUND

Plaintiffs' measure, "The Commercial Rent Arbitration Initiative," would have added a commercial rent stabilization and arbitration ordinance to the city's administrative code if passed.

It is undisputed that plaintiffs complied with all pertinent Elections Code requirements except the petition notice provision. On March 28, 1986, plaintiffs had the following notice published in the San Francisco Progress, a newspaper of general circulation (§§ 4002-4004):

"NOTICE OF INTENTION TO CIRCULATE PETITION [¶] Notice is hereby given that the undersigned individuals intend to circulate a petition for an initiative ordinance within the City and County of San Francisco. [¶] The reason and purpose for such petition is to establish stabilization and arbitration controls for commercial rent." (Plaintiffs' names and the date omitted.)

A copy of the published notice and a proof of publication were then filed on April 4, within the 10 days set by the code (§ 4004).

Plaintiffs circulated the petition between April 19 and July 23, after waiting the required 21 days after publication (§ 4005), and gathered about 15,000 signatures, allegedly more than the number needed to qualify the measure. (S.F. Charter, § 9.111 [5 percent of those who voted for mayor in the last general municipal election].) None of the petition sections contained the published notice.

Plaintiffs presented the petition to defendant for filing on July 23, within the required 180 days from the date of publication (§ 4006). However, defendant refused to examine or verify the petition (§§ 3707-3708, 4008-4009), citing the notice deficiency.

Plaintiffs petitioned the superior court for a peremptory writ of mandate on July 31, alleging a ministerial duty on defendant's part to verify and certify the initiative petition. The writ was ordered denied on August 27, after a hearing, and plaintiffs filed notice of appeal on September 3. In August, while the matter was still pending in the superior court, this court summarily denied a petition by plaintiffs for mandate and a stay (A035893).

Following the lower court's order, plaintiffs applied to this court for a writ of supersedeas. We summarily denied the application on September 9 (A036118), and plaintiffs' subsequent petition for review in the Supreme Court was denied on the 18th.

## APPEAL

### I

A threshold issue, which this court raised on its own at oral argument, is mootness. The November 1986 election has passed, and reversal of the superior court's order is no longer an effective remedy. Defendant cannot be compelled to verify or certify the measure for that election. It also appears that plaintiffs will have to regather signatures for any future initiative effort. Section 4006 states in part: "Signatures . . . shall be secured, and the petition . . . shall be filed within 180 days from the date of publication . . . . If the petitions are not filed within the time permitted by this section, the petitions shall be void for all purposes."

Nevertheless, a moot appeal will not be dismissed if it presents unsettled issues of public importance likely to recur in future elections between these or other parties. (See, e.g., *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 719-720 [94 Cal.Rptr. 602, 484 P.2d 578]; *Diamond* v. *Bland* (1970) 3 Cal.3d 653, 657 [91 Cal.Rptr. 501, 477 P.2d 733], cert. den. (1971) 402 U.S. 988 [29 L.Ed.2d 153, 91 S.Ct. 1661]; *Mann* v. *Superior Court* (1986) 181

Cal.App.3d 372, 374-375 [226 Cal.Rptr. 263].) ▋ As between these parties, we assume that plaintiffs would not make the same mistake twice. As for other cases, we note from the record that defendant's office makes an informational chart available to initiative proponents which clearly states the code's notice requirement should someone be unfamiliar with it, and the code itself is clear (§ 4005).

On the other hand, the city urges that we apply the public interest exception and issue an opinion for guidance because the notice deficiency problem is likely to recur and yet evade meaningful appellate review. The city represents that another initiative measure targeted for the same election suffered from the same defect, and the record shows that the defect has been an issue on at least one prior occasion as well. We find the exception applicable and therefore reach the merits of the controversy.

## II

A notice of intention must be accompanied by a brief statement of reasons (§ 4002) and so is referred to in the code as a "notice of intention and statement" (see §§ 4003-4006). Section 4005 states: "Twenty-one days after the publication or posting or both of the notice of intention and statement, the petition may be circulated among the voters of the city for signatures by any registered voter of the city. *Each section of the petition shall bear a copy of the notice of intention and statement.*" (Italics added.)

▋ Plaintiffs raise the unsettled question of whether the notice-inclusion requirement of this section is mandatory or, rather, directory only. However, as the city correctly points out, this case does not pose that question.

▋ The "mandatory-directory" distinction is used to determine whether action taken in violation of a statutory provision is valid. Failure to comply with a mandatory provision renders the action void; failure to comply with a merely directory provision does not. Which way to characterize the provision depends on its importance in the legislative scheme. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908-910 [136 Cal.Rptr. 251, 559 P.2d 606]; *Campbell Elementary Teachers Assn., Inc.* v. *Abbott* (1978) 76 Cal.App.3d 796, 805-806 [143 Cal.Rptr. 281].)

▋ Plaintiffs argue that section 4005's notice provision is directory only. However, there is no issue of validity here. The initiative was never placed on the ballot and, of course, never became law. Whether the initiative *would have been* valid, had it been voted into law without inclusion of the notice, is immaterial.

The true issue is whether defendant had a ministerial duty to accept the petition in its defective form. Writ of mandate issues only "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . ." (Code Civ. Proc., § 1085.)

Did defendant's duties as registrar of voters require him to, in effect, disregard section 4005's notice requirement and accept the petition? The answer is clearly, "No." We conclude, in fact, that just the opposite is true, that he had a duty to *reject* the petition.

█ Defendant's duties as city registrar include "the ministerial function of ascertaining whether the procedural requirements for submitting an initiative measure have been met." (*Farley* v. *Healey* (1967) 67 Cal.2d 325, 327 [62 Cal.Rptr. 26, 431 P.2d 650], citing S.F. Charter, § 180.) He thus has a ministerial duty to place on the ballot all initiative measures *that comply with formal requirements*. (*Ibid.*; cf. *deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204, 1209 [217 Cal.Rptr. 790].)

█ Plaintiffs' implicit argument that a registrar has a ministerial duty to accept measures that do *not* comply is incompatible with the aforesaid duty, generally, and untenable in this particular dispute. Assuming purely for sake of argument that plaintiffs are correct in characterizing the notice requirement as "directory" and that failure to comply thus would not render the resulting enactment void, it does not follow that a registrar is free to disregard the requirement. █ "There is, of course, a duty to comply even with purely directory provisions. [Citation.]" (*Campbell Elementary Teachers Assn., Inc.* v. *Abbott, supra,* 76 Cal.App.3d 796, 805.) The "mandatory-directory" test used to determine validity is analytically distinct from the "mandatory-permissive" test used to determine the nature of duty. (*People* v. *McGee* (1977) 19 Cal.3d 948, 958-959 [140 Cal.Rptr. 657, 568 P.2d 382]; *Morris* v. *County of Marin, supra,* 18 Cal.3d 901, 908.) The tests are related in the sense that procedures which are purely permissive in the sense of duty are generally regarded as directory and thus not invalidating. "The converse of this proposition is not always true, however, for . . . '[m]any statutory provisions which are "mandatory" in the obligatory sense are accorded only "directory" effect.' [Citation.]" (*People* v. *McGee, supra,* 19 Cal.3d at p. 959.)

█ The statute in this case states that each petition section "*shall* bear a copy of the notice of intention and statement." (§ 4005, italics added.) For purposes of the Elections Code generally, " 'Shall' is mandatory and 'may' is permissive." (§ 11.) To declare a registrar duty-bound to ignore the notice requirement would be to write it out of the code, leaving the requirement an

idle act of the Legislature, something we must avoid if possible. (*Moore* v. *City Council* (1966) 244 Cal.App.2d 892, 897 [53 Cal.Rptr. 603].)

Of course, it is our courts' policy to construe statutory and charter provisions in favor of the exercise of the initiative and referendum powers. Thus, in *Truman* v. *Royer* (1961) 189 Cal.App.2d 240 [11 Cal.Rptr. 159], a case relied on by plaintiffs, this court upheld a Redwood City clerk's decision to accept a referendum petition which was defective in that affidavits from the circulators of the petition failed to state their addresses or to state that they were voters of that city. (*Id.,* at pp. 241, 243-244.) The defect did not invalidate the petition. The affidavits merely accompanied but were not a part of the petition, and the missing information was purely for "the benefit and convenience of the clerk, . . ." (*Id.,* at pp. 243-244.)

Here, in contrast to *Truman,* the defect directly affected the content of the petition sections circulated to voters. Also, as will be explained in part III (*infra),* the information was not just for the benefit of the city official.

The city calls our attention to a case analogous to ours, *Bricker* v. *Banks* (1929) 98 Cal.App. 87 [276 P. 399]. The defect in *Bricker* was trivial by comparison—the statement of reasons in a recall petition was about 50 percent longer than the 200-word limit imposed by a city charter provision, and proponents unsuccessfully sought mandate to compel the city clerk to certify the petition. (*Id.,* at p. 88.) Noting that writ of mandate issues only to compel the performance of a duty enjoined by law, the court rejected an argument (identical to the one raised here) that the writ should have issued because the charter provision was only "directory." (*Id.,* at pp. 88-89.) The court reasoned: "It may be conceded that a recall election held in pursuance of a petition stating the reasons for the recall in somewhat more than two hundred words would not be held invalid on the mere ground that the published call for the election used too many words in stating such reasons, but *in the initial stages of a proceeding for the recall of an officer, in determining the sufficiency of a petition therefor, the law certainly does not enjoin upon any officer, as a duty resulting from his office, the disregard of even a directory statute.*" (Italics added.)

We conclude that defendant did not have a duty to accept the petition in this case.

## III

Plaintiffs argue that section 4005's requirement of including the previously published notice on each petition section does not serve any significant informational purpose for voters and only assists the registrar in

ascertaining whether proponents have complied with the newspaper-publication provisions of sections 4002 and 4003. Thus, they reason that having in fact published the notice constitutes substantial compliance with section 4005. We disagree.

■   Substantial compliance " 'means *actual* compliance in respect to the substance essential to every reasonable objective of the statute.' (*Stasher* v. *Harger-Haldeman* (1962) 58 Cal.2d 23, 29 . . . .)" (*Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 649 [180 Cal.Rptr. 297, 639 P.2d 939], app. dism. and cert. den., 456 U.S. 941 [72 L.Ed.2d 463, 102 S.Ct. 2003].) Refusal to accept a petition will be upheld when the petition's deficiencies threaten the proper operation of election procedures. (*Id.,* at p. 648.)

■   If the notice-inclusion requirement serves some informational purpose for prospective signers of a petition, then there clearly was no substantial compliance. The petition sections in this case failed altogether to include the notice.

We believe that the notice-inclusion requirement does serve an informational purpose. We reject the assertion that the requirement serves as a mere "convenience" to the registrar. The registrar already has the published notice on file along with an affidavit of publication from the newspaper (§ 4004). A copy of the published notice, lacking the affidavit, would not provide as reliable an assurance of compliance. More importantly, if inclusion were truly intended as a convenience to the registrar, there would be no need to have the notice included on *every* petition section (§ 4005) since the petition presumably is presented for filing all at once (see §§ 4006, 4008). In fact, requiring every section to have the notice strongly indicates an intent to inform prospective signers.

The notice also imparts useful information. Its capsule statement of reasons can (1) convey a purpose that the measure's title alone might not (cf. *Clark* v. *Jordan* (1936) 7 Cal.2d 248, 251 [60 P.2d 457, 106 A.L.R. 549]; *Boyd* v. *Jordan* (1934) 1 Cal.2d 468, 472 [35 P.2d 533]; see § 4001), (2) allow the voter to compare those reasons with any offered verbally by the circulator, and (3) affect the voter's decision whether to stop right there or read the text of the entire measure. It is true that the extremely terse statement of reasons *in this case* would have added little to the summary printed on the top of each petition section, but the code contemplates a statement of up to *500 words.* (§ 4002.) The informational purpose is clearly evident.

The notice also conveys information beyond a statement of reasons. The notice must be signed by at least one and no more than three (formerly five)

of the measure's proponents. (§ 4002; see Stats. 1976, ch. 248, § 3, p. 507.) In reviewing financial disclosure provisions for candidates, the Supreme Court has noted, in words applicable here: "Voters who may well be able to understand and judge candidates may not always be able to comprehend and determine the merits of ballot measures which frequently are cast in language, the precise meaning of which often is confusing and perhaps on occasion intentionally so. [Citation.] A voter may reasonably seek to judge the precise effect of a measure by knowledge of those who advocate or oppose its adoption, and he may gain such knowledge only through pre-election disclosure requirements of the nature here involved." (*Brown* v. *Superior Court* (1971) 5 Cal.3d 509, 522 [96 Cal.Rptr. 584, 487 P.2d 1224].) Plaintiffs question the value of the information here by pointing out that the "proponents" who sign the notice might be " 'people off the street' who sign on behalf of the persons and interest groups" that actually spearhead the measure. There is no indication that that is what happened here, but in any event, the argument cuts both ways. A voter might decide *against* signing because the proponents do *not* include anyone he or she recognizes.

We are not impressed with plaintiffs' argument that lack of a statutorily designated print size or location on the petition connotes legislative indifference to informing voters. Nor is it particularly significant that other parts of the Elections Code governing initiative or referendum petitions lack a notice-inclusion requirement. ■ The Legislature is free to "enact reform measures 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' [Citation.]" (*Brown* v. *Superior Court, supra,* 5 Cal.3d 509, 521.)

■ Plaintiffs did not substantially comply with section 4005. Even if we felt that the function of the statement of reasons in this case was adequately covered by the petition summary, there was no *actual compliance* with the statute's apparent objective of identifying the measure's proponents. (*Assembly* v. *Deukmejian, supra,* 30 Cal.3d 638, 649.)

IV

Finally, plaintiffs argue that defendant is estopped to insist on compliance. In the trial court, they alleged estoppel and submitted a declaration by a third party attesting that defendant has accepted defective initiative petitions on at least two prior occasions and has, in general, exhibited "very loose standards . . . with respect to petition form." Defendant submitted an opposing declaration explaining the circumstances of the two occasions to which plaintiffs alluded, and the city argues, as it did below, that those situations are factually distinguishable.

The short answer is that plaintiffs have failed to allege or show any reliance on defendant's prior acts. ■ Pleading and proving detrimental reliance is essential to the doctrine of estoppel. (*City and County of San Francisco* v. *Grant Co* . (1986) 181 Cal.App.3d 1085, 1091 [227 Cal.Rptr. 154]; *Board of Supervisors* v. *Superior Court* (1983) 147 Cal.App.3d 206, 212-216 [195 Cal.Rptr. 67]; cf. *Assembly* v. *Deukmejian, supra,* 30 Cal.3d 638, 650-651.)

## DISPOSITION

The judgment (order denying peremptory writ of mandate) is affirmed.

Kline, P. J., and Rouse, J., concurred.