[No. B041180. Second Dist., Div. Five. Sept. 21, 1989.]

THOMAS IBARRA, Plaintiff and Appellant, v.
CITY OF CARSON et al., Defendants and Respondents.

## COUNSEL

Mitchell, Silberberg & Knupp and John A. Slezak for Plaintiff and Appellant.

Paul Gann as Amicus Curiae on behalf of Plaintiff and Appellant.

Glenn R. Watson, City Attorney, Richards, Watson & Gershon, Mitchell E. Abbott and Deborah R. Hakman for Defendants and Respondents.

## OPINION

ASHBY, J.—Plaintiff and appellant Thomas Ibarra is the named proponent of a municipal initiative measure which he seeks to submit to the voters of the City of Carson. Defendant and respondent Helen S. Kawagoe, as City Clerk of the City of Carson, certified to defendant and respondent City Council of the City of Carson that the proponents had failed to collect enough valid voter signatures on the initiative petition to qualify it for the ballot at the next municipal election. Contending that the city clerk misinterpreted the election laws, appellant petitioned the superior court for a writ of mandate to compel placing the measure on the ballot. The trial court denied the petition, concluding that appellant had not proved that sufficient legally valid signatures were collected. Appellant appeals.

One issue is dispositive. Under Elections Code section 4003, subdivision (b),[1] the proponents of the initiative were required *both* to *publish* in the newspaper *and* to *post* in three public places within the city a notice of

---

[1] All section references hereafter are to the Elections Code unless otherwise indicated.

intention to circulate the petition. The proponents began circulating the petition before complying with the posting element of this requirement. It is undisputed that if, as held by the trial court, the signatures obtained before posting the notice of intent cannot legally be included, there are not enough valid signatures to qualify the measure for the ballot. Agreeing with the trial court's conclusion, we affirm.

## BACKGROUND

The proponents of a municipal initiative measure must comply with various requirements of the Elections Code. (§ 4000 et seq.) Before circulating the initiative petition, the proponents must file with the city clerk a notice of intention to do so (§ 4002, subd. (a)), obtain from the city attorney an impartial ballot title and summary of the measure, and place the notice, title and summary on each section of the petition on which signatures are to appear (§§ 4002.5, subd. (a), 4005).

In this case, appellant filed with the city clerk on April 28, 1988, a notice of intent to circulate the initiative petition and a copy of the initiative petition. On May 13, 1988, the Carson City Attorney provided a ballot title and summary for the initiative.[2]

Section 4003, the crucial section in this case, next requires that "a notice of intention and the title and summary of the proposed measure shall be published or posted or both." The nature of the publishing-and-posting requirement depends upon whether there is an adjudicated newspaper of general circulation in the city: (a) If there is a newspaper of general circulation as described in section 6000 et seq. of the Government Code, adjudicated as such in the city in which the petition is to be circulated, publishing the notice of intention and title and summary in such newspaper is sufficient. (§ 4003, subd. (a).)

(b) If there is no adjudicated newspaper of general circulation in the city in which the petition is to be circulated, but there is a newspaper circulated within the city and adjudicated as being of general circulation within the county in which the city is located, the notice, title and summary shall be published in such newspaper and "shall be posted in three (3) public places within the city, which public places shall be those utilized for the purpose of posting ordinances as required in section 36933 of the Government Code." (§ 4003, subd. (b).)

---

[2] The initiative measure would amend the Carson Mobilehome Space Rent Control Ordinance by authorizing certain rent increases without rental review board approval except for mobilehome owner tenants who obtain board certification that they qualify as very low income households.

(c) Finally, if the petition is to be circulated in a city in which there is no adjudicated newspaper of general circulation and there is no newspaper of general circulation adjudicated as such within the county, the notice, title and summary shall be posted in three public places. (§ 4003, subd. (c).)

The *publish-and-post* requirement of subdivision (b) applies to the present case. The trial court found that there is no newspaper of general circulation adjudicated as such in the City of Carson for publication of legal notices. The Los Angeles Herald Examiner was, however, circulated in the City of Carson and adjudicated as being of general circulation within the County of Los Angeles.

In the present case the proponents published the notice of intention in the Los Angeles Herald Examiner on May 18, 1988, but did not post the notice at three public places in the City of Carson until June 6, 1988. They began circulating the petition for signatures on June 3, 1988, three days before complying with the posting requirement. The signed petition sections were filed with the city clerk on July 6, 1988. The clerk performed her duty pursuant to sections 4006-4009 to examine the petition signatures, and subsequently certified to the city council that the petition had not been signed by the necessary 3,892 voters, 10 percent of the city's voter registration, as required by section 4011.

## DISCUSSION

■ We agree with the trial court that the 182 signatures collected before complying with the posting requirement should not be counted because they were gathered outside the legal time period for circulating the petition. (*Moore* v. *City Council* (1966) 244 Cal.App.2d 892, 899-900 [53 Cal.Rptr. 603].) A proper construction of the election law requires that *before* circulating the petition for signatures the proponents must both publish and post their notice of intention to circulate.

Appellant contends that section 4005, discussed *ante* and *post,* authorized the proponents to commence circulating the petition after complying only with the publishing portion of section 4003, subdivision (b). Appellant contends section 4005 should be interpreted to mean that, even though section 4003 requires the proponents to publish *and* post the notice of intention, the posting need only be accomplished within a "reasonable time" *after* commencement of circulation. Appellant also contends that even if the circulation of the petition was premature, it should be excused on the ground of substantial compliance with the notice requirements. We find no merit to these arguments. Appellant's interpretation of section 4005 is incorrect and cannot be reconciled with the statutory scheme as a whole,

nor can *the premature circulation be excused on the ground of substantial compliance.*

*Statutory Interpretation*

 Section 4002, subdivision (a) requires that "[*b*]*efore circulating* an initiative petition in any city, the proponents of the matter shall file with the clerk a *notice of intention to do so* . . . ." (Italics added.) Section 4003 requires that the "notice of intention and the title and summary of the proposed measure shall be published or posted or both," and in this particular case, both publishing and posting were required.

Appellant argues that section 4003 does not specifically state the time when publishing and posting must be accomplished. However, the plain meaning of the words "notice" of an "intention" or "intent" to do an act, in this case to circulate a petition, compels the conclusion the notices must be given *before* circulation begins.[3] Appellant's argument that posting may be accomplished "a reasonable time" after commencement of circulation tortures the ordinary meaning of a "notice" of an "intention" to circulate.

 Another fallacy in appellant's "reasonable time" interpretation is that the clerk has the ministerial duty to determine whether the notice requirements have been met. (See *Moore* v. *City Council, supra,* 244 Cal.App.2d at pp. 899-900; *Myers* v. *Patterson* (1987) 196 Cal.App.3d 130, 136 [241 Cal.Rptr. 751].) The "reasonable time" rule proposed by appellant gives no objective or certain standard by which the clerk could make this determination. Thus, appellant's interpretation would delegate nonministerial discretion to the clerk.

Section 4005, on which appellant relies, cannot reasonably be interpreted in the manner suggested by appellant to mean that posting may be done after commencing circulation. Section 4005 states, "The proponents may commence to circulate the petitions among the voters of the city for signatures by any registered voter of the city after publication of the title and summary prepared by the city attorney. Each section of the petition shall bear a copy of the notice of intention and the title and summary prepared by the city attorney."

 In construing a statute we are required to interpret its terms consistent with the statutory scheme of which it is a part and to harmonize all the statutes if possible in accordance with the intent of the Legislature. (*Pitney-*

---

[3] To "intend" is to have in mind an object to be gained or achieved. "Notice" is a warning, announcement or intimation given a specified time before the event to take place. (Webster's New Internat. Dict. (3d ed. 1981) pp. 1175, 1544.)

*Bowes Inc.* v. *State of California* (1980) 108 Cal.App.3d 307, 313 [166 Cal.Rptr. 489].) We cannot presume the Legislature enacted inconsistent provisions on the same subject. (*Moore* v. *City Council, supra,* 244 Cal.App.2d at p. 902.)

■■■ The only interpretation which harmonizes both statutes is that section 4005 uses the word "publication" in its broad sense to incorporate *all* the requirements of section 4003.[4] Circulation may not commence before compliance with the "publication" requirements of section 4003, which may, depending on the type of newspaper available, mean publishing in a newspaper *and* posting.

Appellant's interpretation, that publishing in a newspaper before circulation is sufficient, renders meaningless subdivision (c) of section 4003 and a portion of subdivision (b). In a city governed by subdivision (c), the notice is never published in the narrower sense urged by appellant, the notice is only posted. Under appellant's interpretation of "publication," circulation under section 4005 could never commence in a city governed by subdivision (c) of section 4003, because the title and summary would not have been published.

Appellant contends that before its amendment in 1987, section 4005 explicitly referred to the "publication or posting or both" requirements, and that by "deleting" this language the Legislature is presumed to have intended to change the law.[5] This argument would have more weight if section 4005 had been amended in isolation. Instead, the entire statutory scheme was amended in 1987 (chapter 767), and we must construe the amendments together. Since the Legislature decided to retain the publishing-and-posting requirement when it amended section 4003, at the same time it amended section 4005, we cannot give section 4005 the interpretation suggested by appellant.

Prior to the 1987 amendments, the statutory scheme required the proponents to publish the notice of intent and their own statement of the purpose of the initiative measure. The 1987 amendments enacted the new requirement that the proponents file first with the city clerk and obtain an impartial title and summary from the city attorney. The notice provisions were

---

[4] For instance, prior to the 1987 amendments discussed *ante*, section 4002 required the proponents to "publish" notice of intention, and section 4003 stated that the notice as referred to in section 4002 "shall be published or posted or both." (Stats. 1976, ch. 248, § 3, p. 507.) The word "publish" in former section 4002 was obviously used in its broader sense to include both the posting and the narrower sense of publishing in former section 4003.

[5] Previously section 4005 read: "Twenty-one days after the publication or posting or both of the notice of intention and statement, the petition may be circulated among the voters of the city for signatures by any registered voter of the city. Each section of the petition shall bear a copy of the notice of intention and statement." (Stats. 1976, ch. 248, § 3, p. 508.)

amended to require inclusion of the title and summary prepared by city attorney.

The legislative history shows that the Legislature considered but rejected a proposal which would have deleted the publishing and posting requirements altogether and which would have relied wholly upon the filing with the clerk and the petition sections themselves to inform the voters. As originally introduced on March 6, 1987, Assembly Bill No. 2202 would have repealed section 4003. This was not acceptable to the Legislature and, in the bill as amended May 4, 1987, section 4003 was reinserted as amended and section 4005 was amended to read as present. The Legislature's insistence on retaining the publishing and posting requirements indicates the Legislature's belief that these are important and valuable means of giving notice to the voters.

Appellant's speculation that the Legislature might have considered the other forms of notice to be sufficient and posting merely "supplementary" is inconsistent with the Legislature's decision to retain the three categories in section 4003. The Legislature obviously considered that in a city which does not have its own newspaper, posting is necessary and important. The Legislature might believe, for example, that interested citizens are much less likely to read the legal notices in a large metropolitan or countywide newspaper than the legal notices in a more local newspaper of general circulation in their city. Appellant's interpretation of section 4005 is wholly inconsistent, moreover, with subdivision (c) of section 4003, where posting substitutes entirely for newspaper publication.

Appellant argues that the proponents "were entitled to rely" on the language of section 4005. However, in light of the requirement that the proponents post the notice under section 4003, subdivision (b), they, like anyone else, were required to consider section 4005 in light of the statutory scheme of which it is a part. They were not entitled to give section 4005 a narrow literal interpretation which rendered section 4003 meaningless or which would lead to absurd results.

■ Appellant argues that section 4005 should be "liberally construed" in favor of placing the initiative before the voters. The purposes of the notice requirement may include (1) giving the voters a chance to study the issue *before* being approached by circulators and (2) giving potential opponents an opportunity to educate the voters or organize an opposition campaign.[6] The doctrine of liberal construction should not be used to weaken

---

[6] In this case, for example, there was apparently an opposition campaign which succeeded in persuading a number of voters to withdraw their signatures from the petition, as authorized by section 43.

important requirements designed to give information to the voters. (*Myers v. Patterson, supra,* 196 Cal.App.3d 130, 138; *Clark* v. *Jordan* (1936) 7 Cal.2d 248, 252 [60 P.2d 457, 106 A.L.R. 549].)

### Substantial Compliance

Finally, appellant contends that even if the additional 182 signatures were collected before compliance with the posting requirement, they should nevertheless be counted on the ground of substantial compliance. Appellant points out that the proponents did comply with the other notice requirements before circulating, and that they subsequently complied with the posting requirement; furthermore, the petition was circulated for only three days before posting, as compared to 30 days after posting.

■ Whether a failure to comply with requirements of the Elections Code in circulating initiative or referendum petitions is fatal depends upon the nature and purpose of the statutory requirement. Technical defects of form may be excused if the petitions substantially comply with the requirement (*Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 652 [180 Cal.Rptr. 297, 639 P.2d 939]), but actual compliance is required in respect to the substance essential to the objective of the statute. (*Id.* at p. 649.) Where the purpose of the statutory requirement is to give information to the public to assist the voters in deciding whether to sign or oppose the petition, the substantial compliance argument is often rejected and strict compliance held essential. (E.g., *Creighton* v. *Reviczky* (1985) 171 Cal.App.3d 1225, 1233 [217 Cal.Rptr. 834] [referendum petition did not contain full text of ordinance sought to be repealed]; *Chase* v. *Brooks* (1986) 187 Cal.App.3d 657, 664 [232 Cal.Rptr. 65] [same]; *Myers* v. *Patterson, supra,* 196 Cal.App.3d at pp. 138-139 [petition did not contain a copy of the notice of intent to circulate, although the notice had otherwise been published].)

■ In the present case, as we have discussed, the requirement to give notice of intent prior to commencing circulation serves important purposes educating the public about the petition campaign before it begins. The Legislature has determined that in a city which does not have its own adjudicated newspaper of general circulation, posting of the notice in three public places in accordance with the procedure for posting ordinances is an important and valuable means of giving notice to those voters who might not be reached by newspaper publication.

During the first three days of the circulation campaign, when approximately 5 percent of the signatures were obtained, there was *no* compliance with the posting requirement. By circulating the petition before posting notice, the proponents failed to fulfill the essential purpose of the posting

requirement and so cannot be excused on the ground of substantial compliance for the premature collection of signatures.

The judgment is affirmed.

Lucas, P. J., Boren, J., concurred.