[No. D038503. Fourth Dist., Div. One. Nov. 21, 2001.]

ALLAN SONGSTAD et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY et al., Respondents;
BRUCE NESTANDE et al., Real Parties in Interest.

**COUNSEL**

Nossaman, Guthner, Knox & Elliott, Robert D. Thornton, John J. Flynn III, Adam H. Relin, Celena H. Chen; Songstad, Randall & Ulich and William D. Coffee for Petitioners Allan Songstad, Bill Campbell, Debbie Cook and Pat Bates.

Songstad, Randall & Ulich and William D. Coffee for Petitioner Mike Alvarez.

Laurence M. Watson, County Counsel, Edward N. Duran, Steven C. Miller and Nicole A. Sims, Deputy County Counsel, for Respondents Laurence M. Watson, County Counsel for the County of Orange and Rosalyn Lever, Registrar of Voters of the County of Orange.

No appearance for Respondent Superior Court.

Strumwasser & Woocher, Fredric D. Woocher and Michael J. Strumwasser for Real Parties in Interest.

**OPINION**

**McDONALD, J.**—We here decide whether a voter who opposes a proposed countywide initiative may prevent proponents of that initiative from collecting the signatures needed to qualify it for the ballot based on a contention that the title and summary of the initiative prepared by a county counsel are not impartial or accurate.

I

BACKGROUND

Before proponents of a countywide initiative may begin collecting signatures to qualify it for the ballot, the proponents must first file the text of the

proposed initiative with the county elections official and request that a ballot "title and summary" be prepared. (Elec. Code, § 9103, subd. (a).)[1] County counsel must then prepare a ballot title and summary that express the chief purposes and points of the proposed initiative. (Cf. *Lungren v. Superior Court* (1996) 48 Cal.App.4th 435, 439-440 [55 Cal.Rptr.2d 690] [construing title and summary requirements for statewide initiatives].) County counsel's title and summary shall "give a true and impartial statement of the purpose of the proposed measure in such language that the ballot title shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." (§ 9105, subd. (a).) After the county counsel has prepared the title and summary and returned them to the proponents, that title and summary must appear on the petitions the proponents use to collect the signatures necessary to qualify the initiative for the ballot. (§ 9105, subd. (c).)

Petitioners Allan Songstad et al. (Songstad), proponents of an initiative relating to the civilian use of the El Toro Marine Base proposed for placement on the March 2002 ballot for Orange County (the initiative), followed the statutory scheme by submitting the text of the initiative to, and obtaining a title and summary from, the County Counsel for Orange County (County Counsel). Songstad then began collecting signatures on petitions containing the title and summary prepared by County Counsel and text of the initiative to qualify it for the ballot.

Real parties in interest Bruce Nestande and Citizens for Jobs and the Economy (together Nestande) then filed the present lawsuit contending County Counsel's title and summary in the qualification petition were false and misleading, and not impartial. Nestande's lawsuit sought a writ of mandate to require County Counsel to prepare an amended title and summary for the initiative, and to prohibit the Orange County Registrar of Voters from accepting for filing any qualification petition containing the title and summary prepared by County Counsel.

The trial court compared the text of the initiative with the title and summary, heard oral argument from the parties, concluded the title and summary were inadequate and misleading, and issued a writ of mandate granting the relief requested by Nestande. Songstad petitioned the appellate court for a writ of mandate to vacate the trial court's order, arguing (1) Nestande did not at the prequalification stage have standing to challenge the title and summary prepared by County Counsel under section 9105, and (2) the trial court's ruling on the substantive validity of County Counsel's title and summary was erroneous. We stayed the trial court's order, issued an order to show cause, and heard oral argument.

---

[1] All further statutory references are to the Elections Code unless otherwise specified.

We conclude the statutory scheme contemplates that after the county counsel has prepared the title and summary under section 9105, only a proponent of the initiative has standing during the prequalification phase to seek an order requiring the county counsel to amend that title and summary.[2] Accordingly, the trial court's order is vacated.

## II

### ANALYSIS

#### A. *The Statutory Scheme*

The Elections Code contains a comprehensive scheme regulating the process for proposing, qualifying, and conducting an election on countywide initiatives and referenda.[3] (Elections Code, div. 9, ch. 2, §§ 9100-9190.) Under article 1 of chapter 2, proponents of an initiative begin the process by filing with the county elections official a notice of intention, the text of the proposed initiative, and a request that a ballot title and summary be prepared. (§§ 9103, subd. (a), 9104.) Within 15 days after filing these documents, county counsel must prepare and return to the county elections official a ballot title, which may be different from any other proposed title, and a summary of the proposed initiative. The county counsel's title shall "give a true and impartial statement of the purpose of the proposed measure in such language that the ballot title shall neither be an argument, nor be likely to create prejudice, for or against the proposed measure." (§ 9105, subd. (a).) The county elections official must then give the title and summary to the proponents of the initiative, who must place the title and summary in specified places on the petitions that the proponents use to gather signatures of registered voters required to qualify the proposed initiative for the ballot. (§ 9105, subds. (b) & (c).)

Section 9106 provides: "The proponent may seek a writ of mandate requiring the ballot title or summary prepared by the county counsel to be amended. The court shall expedite hearing on the writ. A peremptory writ of mandate shall be issued only upon clear and convincing proof that the ballot title or summary is false, misleading, or inconsistent with the requirements of Section 9105."

The balance of article 1 specifies the standards for determining whether the proposed initiative has qualified for the ballot, and some of the preliminary steps to be taken to submit a qualified initiative to the voters. Article 3

---

[2]Because we conclude Nestande does not have standing to obtain the relief sought below, we do not address whether the trial court's legal conclusion concerning the substantive validity of the title was error.

[3]A parallel scheme for citywide initiatives and referenda is contained in sections 9200 to 9295.

describes the steps to be taken after a proposed initiative has qualified for the ballot to obtain the various ballot materials that will accompany the proposed initiative, including an impartial analysis by county counsel and a fiscal impact statement by the county auditor (§ 9160), and arguments for and against the proposed initiative. (§§ 9161-9167.) Article 5 provides for a period of public examination of the official elections materials and specifies in section 9190 that: "During the 10-calendar-day examination period . . . , any voter of the jurisdiction . . . may seek a writ of mandate or an injunction requiring any or all of the materials to be amended or deleted. A peremptory writ of mandate or an injunction shall be issued only upon clear and convincing proof that the material in question is false, misleading, or inconsistent with this chapter, and that issuance of the writ or injunction will not substantially interfere with the printing or distribution of official election materials as provided by law. . . ."

■■■ We examine in the context of this statutory framework whether persons other than the proponents of an initiative have standing to seek a writ of mandate requiring a county counsel to amend the title and summary prepared under section 9105 for a proposed initiative before the initiative has qualified for the ballot.

B. *Standing to Contest the Title and Summary Contained in the Petitions*

Section 9106 provides that proponents of an initiative may by petition for writ of mandate seek prequalification judicial review of the initiative's title and summary prepared by a county counsel. Section 9106 does not confer on any other person similar standing to seek that relief. Songstad argues that including only proponents in section 9106 represents a legislative decision that prequalification title and summary challenges may only be brought by proponents. Nestande argues, and the trial court concluded, that section 9106's use of the term "proponent" does not evince a legislative intent to preclude persons other than proponents from filing a prequalification title and summary challenges.

■■■ To construe a statute we begin with the probable intent of the Legislature. The goal of statutory interpretation is to "ascertain the intent of the Legislature . . . to effectuate the purpose of the law." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323].) "Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning." (*People v. Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999].) We follow the Legislature's

intent, as exhibited by the plain meaning of the actual words of the law, " ' "whatever may be thought of the wisdom, expediency, or policy of the act." ' " (*People v. Weidert* (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380], quoting *Woodmansee v. Lowery* (1959) 167 Cal.App.2d 645, 652 [334 P.2d 991].) Respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature, and we have "no power to rewrite the statute . . . to make it conform to a presumed intention [that] is not expressed." (*Seaboard Acceptance Corp. v. Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882].)

 The plain language of section 9106 supports Songstad's interpretation: when a county counsel has prepared a title and summary for an initiative, *the proponent* may seek a prequalification writ of mandate requiring the ballot title or summary to be amended. There is nothing in section 9106 suggesting the Legislature, having employed the term "proponent" to identify who may bring the action, intended that persons not within the category of *a proponent* would also have standing to bring a similar action.

Familiar canons of statutory interpretation confirm this construction of section 9106. The phrase *expressio unius est exclusio alterius* expresses the principle that when a statute contains a specific list of matters, by negative implication the Legislature did not intend to extend that list beyond the specified matters. (*Dean v. Superior Court* (1998) 62 Cal.App.4th 638, 641 [73 Cal.Rptr.2d 70].) Section 9106's specific identification of the category of person entitled to bring a prequalification challenge suggests an intent to exclude others from such a challenge. Furthermore, the Legislature added section 9190 in 1980 (Stats. 1980, ch. 710, § 4, pp. 2126-2127) providing that *any voter* has standing to make a postqualification challenge to ballot materials that were allegedly "false, misleading, or inconsistent with the requirements of this chapter." However, when the Legislature enacted section 9106 seven years later (see Stats. 1987, ch. 767, § 3, p. 2435) to address the related subject of a prequalification title or summary that was similarly "false, misleading, or inconsistent with" the applicable requirements, the Legislature did not employ the more inclusive "any voter" term, but instead employed the more limited "proponent" term to describe who has standing to make a prequalification challenge to a title or summary. The use of the broader term for postqualification challenges for false or misleading material, but employment of the narrower term for prequalification challenges raising analogous claims, confirms the Legislature intended only proponents of the proposed initiative to have standing to assert prequalification challenges. The use of a term in a statute addressing a subject, and omitting that term and using a different term in a similar statute addressing a related subject, shows a different meaning was intended in the

two statutes. (*Holmes v. Jones* (2000) 83 Cal.App.4th 882 [100 Cal.Rptr.2d 138].)

Nestande argues that, notwithstanding section 9106, the general mandamus statute (Code Civ. Proc., § 1084) confers standing on any person to bring a prequalification action to force a county counsel to amend the title and summary for a proposed initiative.[4] However, we are cautioned against adopting an interpretation that negates all or part of a statutory scheme. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 634 [59 Cal.Rptr.2d 671, 927 P.2d 1175] [cautioning against interpretation that presumes when Legislature adopted statute it "engaged in an idle act or enacted a superfluous statutory provision"].) Nestande's argument that he has standing under the general mandamus statute makes section 9106 superfluous: if all voters have the standing to bring a prequalification challenge to the title and summary of a proposed initiative under the general mandamus statute, section 9106's specific grant of standing to a proponent to make that challenge would be redundant. Additionally, when a specific statute is enacted to cover a subject with particularity, the specific statute controls over a more general statute that only generically encompasses the same subject. (*Estate of Kramme* (1978) 20 Cal.3d 567, 576 [143 Cal.Rptr. 542, 573 P.2d 1369].) Section 9106 covers standing to file a prequalification challenge with specificity and therefore controls over the more generalized mandamus statute.

Nestande also argues that courts have traditionally upheld the standing of an opponent to challenge the title and summary of a proposed initiative at the prequalification phase. From this predicate, Nestande argues that because courts disfavor an interpretation of a statute that would impliedly repeal another statute (*City and County of San Francisco v. County of San Mateo* (1995) 10 Cal.4th 554, 563 [41 Cal.Rptr.2d 888, 896 P.2d 181]), we should not interpret the Legislature's decision to employ the term "proponent" in section 9106 as repealing this traditional standing but instead that employment of the term "proponent" was merely an inartful or inadvertent selection of terminology. We are aware of only two cases—*Boyd v. Jordan* (1934) 1 Cal.2d 468 [35 P.2d 533] and *Clark v. Jordan* (1936) 7 Cal.2d 248 [60 P.2d 457, 106 A.L.R. 549]—that invalidated initiatives based on inaccurate titles. However, neither case involved an action that would have prohibited a

---

[4]Nestande also asserts he has standing under the "any elector" language of section 13314. However, section 13314 only pertains to challenges to the inclusion of a name or printing error in a ballot, sample ballot, voter pamphlet, or other official matter. The title and summary prepared for a qualification petition is not a name or printing error in a ballot, sample ballot, voter pamphlet or other official matter.

proponent from gathering signatures to qualify a proposed initiative for the ballot. More importantly, because both of those cases evaluated *proponent-prepared* titles, the court in *Epperson v. Jordan* (1938) 12 Cal.2d 61, 66 [82 P.2d 445] opined that the statutory change requiring Attorney-General-prepared titles called into doubt the continuing vitality of the substantive analysis of those cases. In contrast to the de novo evaluation of the titles employed by the *Boyd* and *Clark* courts, the *Epperson* court explained at page 66 that "[i]n approaching the question as to whether the title so prepared [by the attorney general] is a proper one all legitimate presumptions should be indulged in favor of the propriety of the attorney-general's actions. Only in a clear case should a title so prepared be held insufficient. Stated another way, if reasonable minds may differ as to the sufficiency of the title, the title should be held to be sufficient." Furthermore, Nestande's reliance on *Epperson v. Jordan, supra,* 12 Cal.2d 61 for the proposition that opponents have historically had standing to challenge an initiative's title and summary prepared by county counsel is not persuasive because *Epperson* did not hold an opponent of the initiative had standing to file a prequalification challenge.[5] Indeed, any question of standing was effectively mooted by *Epperson's* conclusion that the initiative's title and summary there in issue were substantively valid. (*Epperson, supra,* at pp. 69-71.)

Finally, we note that our interpretation of section 9106 does not impliedly repeal the standing historically accorded to opponents of countywide initiatives to challenge titles or summaries at the prequalification stage. Prior to the enactment of the legislation that included section 9106 there was no limitation on a proponent's ability to select a title for the initiative. Section 9106 was part of Assembly Bill No. 2202, adopted by the Legislature in 1987. (See Stats. 1987, ch. 767, p. 2434.) The legislative history shows that, before enactment of Assembly Bill No. 2202, proponents could circulate their petition with a statement of purpose without "any review . . . by a city or county attorney." (Assem. 3d reading analysis of Assem. Bill No. 2202

---

[5]Nestande points out that *Epperson* did evaluate and reject two challenges to its jurisdiction to hear the challenges. However, this fact does not aid Nestande's standing argument. The first challenge rejected by *Epperson* was a separation of powers claim. (*Epperson v. Jordan, supra,* 12 Cal.2d at p. 64.) The second challenge asserted that former Political Code section 1197 (providing for review by a statutory board of title commissioners) was the sole and exclusive method for objecting to title. *Epperson* concluded the sections creating the board were themselves unconstitutional and accordingly could not limit the court's ability to review the titles (*Epperson,* at pp. 63-64), but only *after* observing that "[i]f such sections were valid it is quite possible that the method therein provided was intended to be the sole method of passing upon the correctness of such titles." The latter observation suggests that if the Legislature enacts a valid limitation on challenges to titles, such as section 9106, that limitation will be honored by the courts. There is nothing in *Epperson* to undermine our conclusion that an opponent does not have standing to file a prequalification challenge to an initiative.

(1987-1988 Reg. Sess.) as amended May 14, 1987, p. 1.) One of the articulated purposes of the bill was to "provide voters with an impartial analysis of the proposed initiative measure when they are asked to sign an initiative petition" (*id.* at p. 2), which is accomplished by requiring the county attorney to "prepare an impartial title," but preserving to "a proponent" the right to seek an amendment to that title if it is false or misleading. (*Id.* at p. 1.) This legislative history accords with our understanding of the operation of this legislation: the proponent of an initiative is entitled to seek signatures in order to have the proposed legislation qualified for the ballot, subject only to the tempering effect of the county counsel's impartial title, and is not required (as a condition to seeking signatures) to also obtain the approval of its title from those opposed to the measure. Because opponents historically have not had standing to challenge the accuracy or impartiality of titles on local initiatives at the prequalification stage, our interpretation of section 9106 does not impliedly repeal standing to do so.

Nestande also notes that the purpose of the impartial titling and summarizing requirements is to avoid misleading members of the public who are asked to sign a petition to qualify an initiative for the ballot. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 243 [149 Cal.Rptr. 239, 583 P.2d 1281].) Nestande then argues an interpretation of section 9106 that prohibits challenges to the accuracy of the county counsel's title and summary by persons other than proponents undermines that policy, particularly in those cases in which a county counsel is favorably disposed toward an initiative and colludes with its proponents to mislead the public.[6] We construe sections 9105 and 9106 as a legislative balancing of two competing interests. On the one side, proponents have an interest in exercising the important franchise embodied in the initiative process. On the other side, the general public has a competing interest of not being misled or confused by titles and summaries contained on the initiative petitions being

[6]Nestande also argues, with unintended candor, that our interpretation of section 9106 renders them "powerless to prevent its qualification for the ballot" based on a misleading title, suggesting that the net effect of permitting opponents to challenge misleading titles at the prequalification stage would be to stop the measure from being qualified for the ballot. However, in our democratic system, the ordinary remedy for speech that tends to mislead the targeted audience is not to restrain the speaker from speaking to that audience but is instead more speech. (See generally *Va. Pharmacy Bd. v. Va. Consumer Council* (1976) 425 U.S. 748, 779-780 [96 S.Ct. 1817, 1834-1835, 48 L.Ed.2d 346] (conc. opn. of Stewart, J.).) By parity of reasoning, if Nestande believes the title and summary inaccurately portray the effect of the initiative, the remedy is not to prevent Songstad from placing the initiative before the voters, but instead is to convince the voters that the measure does not produce the beneficent effects portrayed in the title and summary. This interpretation is consonant with First Amendment principles and also "accord[s] with the fundamental concept that provisions relating to the initiative should be liberally construed to permit, if possible, the exercise by the electors of this most important privilege." (*Epperson v. Jordan, supra,* 12 Cal.2d at p. 66.)

circulated by proponents. The Legislature has balanced these competing interests by permitting a proponent to circulate his petition, subject only to the requirement that the titling and summarizing function be shifted from the proponent to a third party arbiter, but also providing the proponent a remedy if he believes the third party's title or summary inaccurately portrays the contents of his initiative. If the Legislature wished to place a further limitation on the proponent's ability to qualify the initiative for the ballot by way of giving title and summary approval to any and all interested members of the general public at the prequalification stage, it was capable of expressing that intent. (See § 9190.) Furthermore, the opponents of an initiative have postqualification standing to challenge the title and summary that are included in the ballot materials before the public vote on the initiative.

### DISPOSITION

Let a writ of mandate issue directing respondent superior court to vacate its order granting Nestande's petition for a writ of mandate, and to enter a new and different order and judgment dismissing Nestande's petition for a writ of mandate. Songstad shall recover costs in this writ proceeding. The stay issued August 24, 2001, is hereby vacated. This opinion is final immediately as to this court. (Cal. Rules of Court, rule 24(d).)

Haller, Acting P. J., and McIntyre, J., concurred.

On November 26, 2001, the opinion was modified to read as printed above.