[No. A048625. First Dist., Div. Four. Feb. 22, 1990.]

HAYWARD AREA PLANNING ASSOCIATION et al., Petitioners,
v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
HAYWARD 1990, INC., et al., Real Parties in Interest.

[No. A048629. First Dist., Div. Four. Feb. 22, 1990.]

JUDY VONADA, as Clerk, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
HAYWARD 1990, INC., et al., Real Parties in Interest.

### COUNSEL

Zach Cowan, Nancy Black and Alice C. Graff, City Attorney, for Petitioners.

Frank Goulart as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Baker & McKenzie, Bruce Jackson, Jonathan Kitchen, Kerry Shapiro, Douglas Potts, Wes Van Winkle, Bagatelos & Fadem and Barry Fadem for Real Parties in Interest.

OPINION

**CHANNELL, J.**—We consider in this opinion whether the referendum petition which is the subject of these petitions is fatally defective in failing to carry the title set forth in Elections Code section 4052.[1] We conclude that, since the heading of the petition contained the same information as the title would have and did so briefly and clearly, the lack of the title did not invalidate the petition.

## PROCEDURAL HISTORY AND FACTS

On October 10, 1989, the Hayward City Council (City Council) approved resolution No. 89-295 C.S. which amended the Hayward General Policies Plan and the Walpert Ridge Specific Area Plan to enable residential and commercial development of Walpert Ridge to proceed. Shortly thereafter certain residents and voters (hereafter referred to as Associations) circulated a referendum petition requesting the City Council to repeal resolution No. 89-295 C.S. or submit it to the vote of the people. On November 9, 1989, the petition was submitted to the city clerk who certified that the petition contained more than the requisite number of valid signatures. On December 5, 1989, the City Council ordered the resolution be submitted to a vote of the people at the regularly scheduled general municipal election to be held on April 10, 1990.

On or about January 17, 1990, Hayward 1900, Inc., a prospective developer (hereinafter referred to as Hayward 1900) filed a petition for writ of mandate in superior court naming as respondents Judy Vonada, in her official capacity as Clerk of the City of Hayward, the Hayward City Council and the City of Hayward (hereinafter referred to as the City) and naming the Associations as real parties in interest. The petition sought to invalidate the city clerk's action in certifying the referendum petitions to the City Council and to strike the referendum from the April 10th ballot. The petition was granted at a hearing held on February 8, 1990.

On February 9, 1990, the Associations and the City filed a notice of appeal and a petition for writ of supersedeas. This court denied the petition for supersedeas on the ground that the order granting mandate was automatically stayed pursuant to section 1110b of the Code of Civil Procedure. The denial was without prejudice to the filing of a petition to lift the stay.[2]

---

[1] Unless otherwise indicated, all further statutory references are to the Elections Code.

[2] Code of Civil Procedure section 1110b provides as follows: "If an appeal be taken from an order or judgment granting a writ of mandate the court granting the writ, or the appellate court, may direct that the appeal shall not operate as a stay of execution if it is satisfied upon

On February 14, 1990, both the Associations and the City petitioned this court for writ of mandate urging this court to consider the merits by extraordinary writ rather than by appeal. Since an appeal could not be determined prior to the election, the remedy by appeal is inadequate. (See *Brown* v. *Superior Court* (1971) 5 Cal.3d 509, 515 [96 Cal.Rptr. 584, 487 P.2d 1224].) Because the decision of the superior court is stayed pending the appeal, the referendum will remain on the ballot, inevitably causing confusion in the electorate as to the effect of the vote. If the stay were lifted, the ensuing election would render the appeal moot.

## DISCUSSION

In 1982, the Legislature added provisions to Elections Code section 4052 regarding the form in which referendum petitions are to be submitted.[3] ▮ The sole contention presented by Hayward 1900 is that the referendum petition does not comply with the requirement of section 4052 that "Across the top of each page of the referendum petition there shall be printed the following: 'Referendum Against an Ordinance Passed by the City Council.'"

The referendum petition in this case does not contain this wording across the top.[4] Rather it commences with the following language: "To the City Council of Hayward:

"We, the undersigned, duly registered and qualified voters of the City of Hayward, California, constituting not less than 10% of the number of voters within the City according to the county clerk's last official report of registration, by this petition protest the adoption of Resolution No. 89-295 C.S. amending the General Policies Plan and Walpert Ridge Specific Area Plan in connection with General Policies Plan Amendment No. 88-17,

---

the showing made by the petitioner that he will suffer irreparable damage in his business or profession if the execution is stayed."

[3] Section 4052 provides in its entirety as follows: "(a) Across the top of each page of the referendum petition there shall be printed the following: 'Referendum Against an Ordinance Passed by the City Council' [¶] (b) Each section of the referendum petition shall contain the identifying number or title and text of the ordinance or the portion of the ordinance which is the subject of the referendum. [¶] The petition sections shall be designed in the same form as specified in Section 3516. [¶] (c) Each section shall have attached thereto the declaration of the person soliciting the signatures. This declaration shall be substantially in the same form as set forth in Section 3519, except that the declaration shall declare that the circulator is a voter of the city and shall state his or her residence address at the time of the execution of the declaration."

[4] A declaration of Sherman Lewis attached to the opposition filed in the superior court states that Mr. Lewis was primarily responsible for the initial drafting of the referendum petition. He included in the mock-up a heading in the language of section 4052. He does not know how the heading was omitted or lost.

adopted on October 10, 1989, which is attached hereto. We petition that this resolution be repealed by you or be submitted to a vote of the people at a future election."

The City and the Associations contend that the petition substantially complies with the requirement of section 4052. Hayward 1900, on the other hand, contends that there can be no application of the doctrine of substantial compliance in the absence of any compliance with the title requirement. The trial court agreed that substantial compliance could only be applied if there was a title and only changes in its wording were required; for example, if a "resolution" rather than an "ordinance" was the subject of the referendum.

The court in *Chase* v. *Brooks* (1986) 187 Cal.App.3d 657, 663 [232 Cal.Rptr. 65], articulated the principles which guide a determination of the effect of a failure to comply with section 4052 as follows: "[A]lthough the language of section 4052 is mandatory, employing the term 'shall,' the 'substantial compliance' test controls. [Citations.] For ' " 'it has long been our judicial policy to apply a liberal construction to [the] power [of initiative and referendum] wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it. [Citations.]' " ' [Citation.] However, where petition deficiencies threaten the proper operation of the election process, refusal to file the petition has been judicially upheld. [Citations.] Although such statutes should be liberally construed to permit the exercise by the electors of this most important privilege, the statutes designed to protect the elector from confusing or misleading information should be enforced so as to guarantee the integrity of the process. [Citations.] Consequently, ' "[s]ubstantial compliance . . . means *actual* compliance in respect to the substance essential to every reasonable objective of the statute." ' [Citation.] In other words, technical deficiencies in referendum petitions will not invalidate the petitions if they substantially comply with statutory and constitutional requirements, for '[a] paramount concern in determining whether a petition is valid despite an alleged defect is whether the purpose of the technical requirement is frustrated by the defective form of the petition.' [Citations.]"

In *Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638 [180 Cal.Rptr. 297, 639 P.2d 939], from which the above principles derive, the referendum petition was defective because it did not direct signers to provide their "residence address." The court looked to the reason for the requirement, i.e., to enable the registrar to determine if the signer was a "qualified register voter." The court held that providing the "address as registered to vote" did not fulfill this objective. (*Id.* at pp. 650-651.) The objective of the requirement was not

fulfilled and, therefore, there was not substantial compliance.[5] (Cf. *Ibarra* v. *City of Carson* (1989) 214 Cal.App.3d 90, 99 [262 Cal.Rptr. 485]; *Myers* v. *Patterson* (1987) 196 Cal.App.3d 130, 137-139 [241 Cal.Rptr. 751].)

There have been only two cases which have interpreted section 4052 since its amendment in 1982. In *Creighton* v. *Reviczky* (1985) 171 Cal.App.3d 1225 [217 Cal.Rptr. 834], the petition did not contain the text of the ordinance. The reviewing court found that "the legislative purpose in enacting the 1982 amendments to section 4052 was to reduce confusion as to the contents of referendum petitions. It is clear that the hazard of confusion which the Legislature sought to reduce is the confusion in the minds of the electors as to the true import of the referendum petitions they are asked to sign." (*Id.* at p. 1231.) In ruling that the petition was invalid, the reviewing court explained: " 'A paramount concern in determining whether a petition is valid despite an alleged defect is whether the purpose of the technical requirement is frustrated by the defective form of the petition.' (*Assembly* v. *Deukmejian, supra*, 30 Cal.3d 638, 652.) Here, the petition utterly failed to apprise prospective signers of the substantive provisions of ordinance number 84-751. It follows that the purpose of Elections Code section 4052 was in fact frustrated by the defective form of the petition."[6] (*Id.* at p. 1233.)

In *Chase* v. *Brooks, supra*, 187 Cal.App.3d 657, the reviewing court held that a referendum petition was invalid because it did not contain an exhibit to the challenged ordinance. The ordinance was a zoning ordinance which modified existing zones and zone boundaries and reclassified property. The missing exhibit was necessary to inform the "prospective signers of the precise location of affected real property to permit them to informatively evaluate whether they should sign the referendum petition challenging the substantive provisions of the ordinance." (*Id.* at p. 664.)

From the above cases, it can be seen that the doctrine of substantial compliance should not be rejected simply because there is *no* title across the top of the referendum petition, the position that Hayward 1900 urges. In *Creighton,* there was *no* ordinance text attached to the petition. In *Assembly* v. *Deukmejian,* there was *no* residence address on the petitions. Rather, a

---

[5] The court in *Assembly* v. *Deukmejian* held that the defect, though it would invalidate future petitions, did not render the referendum petitions at issue invalid under "the unusual and unique circumstances" of the case since the proponents had relied on a practice that not only had been accepted by the government entities charged with enforcing referendum procedures, but also had never been subjected to a challenge from any source. (*Assembly* v. *Deukmejian, supra,* 30 Cal.3d at pp. 650-652.)

[6] The petition in *Creighton* was apparently headed, as was the instant petition, without the legend spread across the top but commenced as did the instant petition. (*Creighton, supra,* 171 Cal.App.3d at pp. 1227-1228.) The petition was not challenged on the ground that the legend was missing and the court made no comment on the heading.

court must determine the objective of the heading required by section 4052 and determine if the actual heading on the petition fulfilled that objective.

■ The general objective of section 4052 is to "reduce confusion as to the contents of referendum petitions." (*Creighton* v. *Reviczky, supra,* 171 Cal.App.3d at p. 1231.) The title requirement of section 4052 tells the prospective signer briefly that he or she is being asked to sign a petition which is "against" an ordinance already passed by the City Council. The title reduces the confusion which may result from a lengthy, legalistic description of the contents of the petition. The petitioning language of the referendum can also contain this information but may do so in the midst of other language which disguises the true purpose, particularly from the hurried or unschooled reader, but also from the ordinary reader. ■ In the referendum petition being considered here, the language of the petition, which appears alone above the signatures, actually furnished all the information to the prospective signers that would have been furnished by the statutory title. It stated that the signers "protest the adoption" of the resolution and request that the resolution "be repealed" or "submitted to a vote of the people." Although the language of the heading contains other information, it does so in only two sentences: The first sentence is somewhat lengthy and arguably could confuse a reader. However, the second sentence is short and straightforward. "We petition that this resolution be repealed by you or be submitted to a vote of the people at a future election." That sentence is as informative and helpful as the words "Referendum Against an Ordinance Passed by the City Council," particularly since a reader likely to be confused by the first sentence would not be likely to know the meaning of the word "referendum." We conclude that in the instant case the language of the petition fulfills the objective of the title requirement of section 4052.[7]

Hayward 1900, however, contends that prospective signers actually were confused by the absence of the title. Attached to the petition for mandate in superior court was the declaration of Dolores Schley. Ms. Schley states that after initially reviewing the document, she was not aware that it was a referendum petition and was confused as to its actual purpose. She was informed by the circulator of the petition that the objective of the petition was merely to inform the City Council of a public concern that the project was too large. She is actually in favor of the development project and would not have signed the petition if she had known its purpose. ■ In

---

[7]Respondent court remarked at the hearing on the petition below: "The language of the heading on the petition circulated described in greater detail, and in this Court's judgment, with more clarity to [the] average reader, what the petition was about and what, by signing, the individual signor was asking the city council to do." We agree with these comments and disagree only with whether the doctrine of substantial compliance could be applied in the absence of any title.

determining whether the objective of section 4052 was frustrated by a defect in the petition, it is appropriate to consider such evidence. (See *Creighton* v. *Reviczky, supra*, 171 Cal.App.3d at p. 1233.) However, as was pointed out by the opposition below, Ms. Schley may simply be confused about the entire issue since she refers in her declaration to the Council's resolution as "opposing" the project when in fact the resolution approved the project. In any event, it is inherently improbable that the title language of section 4052 could have clarified the type of confusion Ms. Schley describes. The title language does not deal with the motivation behind the petition but with the subject of the petition.

■ We conclude that this is a situation where " ' "doubts can reasonably be resolved in favor of the use of [the] reserve power [of referendum]" ' " (*Assembly* v. *Deukmejian, supra*, 30 Cal.3d at p. 652) and, therefore, grant the petitions of the City and the Associations.

We have complied with the procedural requirements for issuance of a peremptory writ in the first instance. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].) In light of the need to expedite a decision in time for accurate ballot information to reach the electorate, this opinion is final forthwith. (Cal. Rules of Court, rule 24(d).) Let a writ of mandate issue directing respondent superior court to vacate its order granting Hayward 1900's petition and enter a new order denying that petition.

Anderson, P. J., and Perley, J., concurred.