[No. H018240. Sixth Dist. Aug. 3, 1998.]

CHARLES D. HEBARD et al., Plaintiffs and Appellants, v.
ANNE BYBEE, as City Clerk, etc., et al., Defendants and Respondents;
WTA TECHNOLOGY PARK, LLC, Real Party in Interest and
Respondent.

**COUNSEL**

Harry A. Oberhelman III for Plaintiffs and Appellants.

Dempster, Seligmann & Raineri and William R. Seligmann for Defendants and Respondents.

Rosenblum, Parish & Isaacs, Myron L. Brody, Wayne L. Bender, Andrea J. Ingram and Brooke Malody Kernick for Real Party in Interest and Respondent.

**OPINION**

**COTTLE, P. J.**—In this case we determine that respondent Anne Bybee, the City Clerk of Campbell, properly rejected the sections of a referendum petition that misstated the title of the city ordinance challenged by the referendum. We agree with the trial court that the petition sections containing the misstated title neither technically nor substantially complied with the requirements of the Elections Code, and therefore affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Ordinance No. 1953*

On December 8, 1997, the City of Campbell (City) adopted Ordinance No. 1953 (the Ordinance). The Ordinance changed the City's general plan designation for a 24-acre parcel of land located at 535 Westchester Drive in the City, known as the "Winchester Drive-In Site." Specifically, the Ordinance changed the designation of 19.58 acres from commercial to industrial, and the designation of 4 acres from commercial to public/semipublic.

On the same day, the city council adopted another ordinance granting real party in interest WTA Technology Park, LLC a permit to develop a research and development business park on the portion of the property that had been designated for industrial land uses.

B.  *The Referendum Petition*

Appellants Charles D. Hebard, Neal Locke and others prepared and circulated a referendum petition seeking to overturn the portion of the Ordinance that changed the general plan designation of the 19.58 acres from commercial to industrial use. Appellants do not challenge the change in designation of the four-acre portion of the property (from commercial to public/semipublic).

After circulation, the referendum petition consisted of 203 sections, each containing up to 26 voter signatures. Appellants presented the referendum, in 203 sections, to the city clerk on January 6, 1998. According to appellants and the city clerk, to be qualified, the referendum petition was required to be signed by at least 1,901 registered voters of the City. (See Elec. Code, § 9237.)[1] Appellants counted approximately 3,000 valid signatures of registered voters of the City on the referendum petition.

The referendum petition sections presented to voters contained certain information about the Ordinance. First, the petition sections stated: "Referendum Against an Ordinance Passed by the City Council of the City o[f] Campbell, Santa Clara County, California." On the next line, the referendum petition stated: "Ordinance No. 1953, passed on December 8, 1997." The referendum petition then purported to state the title of the Ordinance.

The actual title of the Ordinance, as adopted by the City Council, was as follows: "Being an Ordinance of the City Council of the City of Campbell Amending the Land Use Element of the General Plan Changing the Land Use Designation of 19.58 Acres From Commercial Destination to Industrial to Allow a Research and Development Business Park and Changing the Land Use Designation of

---

[1]Section 9237 of the Elections Code provides: "If a petition protesting the adoption of an ordinance and circulated by any qualified registered voter of the city, is submitted to the elections official of the legislative body of the city in his or her office during normal office hours, as posted, within 30 days of the adoption of the ordinance, and is signed by not less than 10 percent of the voters of the city according to the county elections official's last official report of registration to the Secretary of State, or, in a city with 1,000 or less registered voters, is signed by not less than 25 percent of the voters or 100 voters of the city whichever is the lesser, the effective date of the ordinance shall be suspended, and the legislative body shall reconsider the ordinance."

FOUR ACRES FROM COMMERCIAL DESTINATION TO PUBLIC/SEMI-PUBLIC-FOR USE AS PUBLIC OPEN SPACE ON THE FORMER WINCHESTER DRIVE-IN SITE. FILE NO. GP96-02."

In 24 of the sections (or copies) of the referendum petition prepared by referendum proponents and circulated among voters, this Ordinance title was correctly set forth. The voters who signed these sections of the petition were thus presented with the correct Ordinance title (along with other items) when they were asked to sign the petition.

In 179 other sections of the referendum petition, however, 3 words ("of four acres") were omitted from the title of the Ordinance. The title as set forth in these 179 sections of the referendum petition was as follows: "TITLE: Being an Ordinance of the City Council of the City of Campbell, Amending the Land Use Element of the General Plan changing the Land Use Designation of 19.58 acres from Commercial Destination to Industrial to allow a Research and Development Business Park, and changing the Land Use Designation from Commercial Destination to Public/Semi-Public for use as Public Open Space on the former Winchester Drive-In Site. File No. GP96-02." This incomplete title was presented (along with other items) to the voters who signed these 179 sections of the petition.

All 203 sections of the referendum contained the identifying number of the Ordinance, No. 1953, and the full text of the Ordinance, including the exhibit attached to the Ordinance, which depicted the portions of the property for which the general plan designations were being changed.

On January 9, 1998, the city clerk notified appellants that the petition was defective because 179 sections of the referendum petition misstated the title of the ordinance that was the subject of the referendum. The city clerk also stated that in some instances, the circulators did not complete their full addresses on the circulators' declarations, as required by Elections Code section 9238, subdivision (c).[2] The city clerk therefore rejected those portions of the petition with the defective titles or defective circulators' declarations.[3]

C.   *Petitions for Writ of Mandate*

On January 16, 1998, the city clerk filed a petition seeking a writ of mandate directing the registrar of voters (registrar) to reject and disregard

---

[2]All subsequent statutory references are to the Elections Code unless otherwise specified.

[3]Subsequently, the city clerk sent an additional letter to the referendum proponents stating that the referendum petition was defective because "Campbell, California" was preprinted on all of the circulators' declarations. The trial court found that this substantially complied with the requirements of the Elections Code, and this issue has not been raised on appeal.

those sections of the petition that contained an incorrect ordinance title or an incomplete circulator's declaration. On or about January 23, 1998, appellants filed their own petition for a writ of mandate to compel the city clerk and the registrar to accept and certify all sections of the referendum petition. Appellants filed an amended petition for writ of mandate on January 29, 1998.

Both petitions for writ of mandate were heard by the superior court at the same hearing on February 5, 1998. After oral argument, the trial court stated that the incorrect ordinance title could have resulted in voter confusion and was not in technical or substantial compliance with the requirements of the Elections Code.

With regard to appellants' petition, the court directed the city clerk to accept (and the registrar to count the signatures of) all sections of the referendum petition *except* the 179 sections with the incomplete title of the Ordinance and the 2 sections lacking the street address of the circulator.[4] In all other respects, the court denied appellants' petition. With regard to the city clerk's petition, the court issued a peremptory writ of mandate directing the registrar to refrain from counting the signatures collected on the 179 sections of the petition containing the incorrect ordinance title, and the 2 sections of the petition that failed to set forth the street address of the circulator in the circulator's declaration.

As a result of the trial court's ruling, after oral argument the registrar recounted the signatures and advised the city clerk that there were only 334 valid signatures on the referendum petition. By letter dated February 9, 1998, the city clerk then advised appellants that the number of valid signatures needed to qualify the referendum petition was 1,901, that the petition contained 334 valid signatures, and that the petition was therefore insufficient and did not qualify.

Judgment was entered by the trial court on March 10, 1998. Appellants filed a notice of appeal from the trial court's judgment denying their petition for writ of mandate.

On appeal, appellants contend (1) that the referendum petition technically complies with section 9238 because it contains the ordinance number in addition to the defective ordinance title; (2) that the referendum petition substantially complies with the requirements of section 9238 despite the incomplete title; and (3) that the trial court's decision regarding voter confusion was rendered in the absence of any evidence of voter confusion.

---

[4]Appellants conceded before the trial court that two of the two hundred three sections submitted did not contain a proper circulator's declaration due to the use of a post office address rather than a street address.

## II. Discussion

### A. *Technical Compliance With Section 9238*

■ Appellants first argue that the referendum petition here technically complies with section 9238. The construction of this statute is a legal question, subject to independent review by this court. (See *Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305 [202 Cal.Rptr. 44].)

■ Section 9238 provides, in relevant part: "(a) Across the top of each page of the referendum petition there shall be printed the following: [¶] 'Referendum Against an Ordinance Passed by the City Council' [¶](b) Each section of the referendum petition shall contain (1) the identifying number or title, and (2) the text of the ordinance or the portion of the ordinance that is the subject of the referendum."

The purpose of these requirements is "to reduce confusion as to the contents of referendum petitions in the minds of electors." (*Billig* v. *Voges* (1990) 223 Cal.App.3d 962, 966 [273 Cal.Rptr. 91].) Thus, ". . . where a petition does not comply with the reasonable objectives of statutes designed to protect electors from confusing or misleading information, its deficiencies threaten the integrity of the election process, warranting a refusal to file the petition." (*Ibid.*, quoting *Chase* v. *Brooks* (1986) 187 Cal.App.3d 657, 663 [232 Cal.Rptr. 65].)

■ Appellants contend that the referendum petition here meets the technical requirements of section 9238, which requires the text of the challenged ordinance and *either* its number *or* its title. They argue that because their petition included the number and the text of the challenged ordinance, the title was not necessary. As a result, they argue, the presence of an incomplete title (or even no title at all) does not violate section 9238.

We find this argument unpersuasive. Although appellants were free to include the number and text of the Ordinance (with no title), this does not mean that they were free to include an *inaccurate* title. A voter faced with a petition challenging an ordinance identified only by number is forced to rely upon the text of the measure for a written account of its contents. Here, in contrast, a voter might rely on the inaccurate title printed on the petition.

By choosing to include both the number and title of the Ordinance, appellants had a duty to provide both of them correctly to the voters who would rely on the accuracy of the materials presented. A contrary holding,

allowing an inaccurate ordinance title whenever the ordinance number is present, would promote precisely the uncertainty and confusion the statutory requirements are designed to prevent. In light of the purpose of the statute, and our obligation to construe the statute to effectuate the Legislature's intent, we cannot conclude that the petition here with its inaccurate title technically complies with section 9238.

### B.  *Substantial Compliance With Section 9238*

■  Appellants also argue that the referendum petition is in substantial compliance with section 9238.  ■  Technical deficiencies in referendum petitions will not invalidate the petitions if they are in "substantial compliance" with statutory and constitutional requirements. (*Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 652 [180 Cal.Rptr. 297, 639 P.2d 939]; *Hayward Area Planning Assn.* v. *Superior Court* (1990) 218 Cal.App.3d 53, 57 [266 Cal.Rptr. 745].)

In considering whether a petition substantially complies with a statute, courts look to the reason for the statutory requirement. "A paramount concern in determining whether a petition is valid despite an alleged defect is whether the purpose of the technical requirement is frustrated by the defective form of the petition." (*Assembly* v. *Deukmejian, supra*, 30 Cal.3d at p. 652.) Consequently, " '[s]ubstantial compliance . . . means *actual* compliance in respect to the substance essential to every reasonable objective of the statute.' " (*Assembly* v. *Deukmejian, supra*, 30 Cal.3d at p. 649; *Chase* v. *Brooks, supra*, 187 Cal.App.3d at p. 663.)

■  We therefore consider whether the misstated ordinance title on the referendum petition here frustrated the purpose of section 9238. The parties have cited no case involving an inaccurate ordinance title on a referendum petition. Cases involving other defects, however, illustrate the principles necessary to our decision. Courts have consistently held that the petition must contain the exact words of the challenged ordinance. In *Creighton* v. *Reviczky* (1985) 171 Cal.App.3d 1225 [217 Cal.Rptr. 834], the referendum petition did not contain the text of the ordinance. The court held that the petition "utterly failed to apprise prospective signers of the substantive provisions of [the ordinance]" (*id.* at p. 1233), and that the purpose of the statute requiring the text was frustrated by the defective form of the petition. In *Billig* v. *Voges, supra*, 223 Cal.App.3d 962, the court held that use of an ordinance *summary* instead of the text was not sufficient, and that the referendum petition must contain the exact wording of the challenged ordinance.

Courts have also required the petition to include exhibits that were a part of the challenged ordinance. In *Chase* v. *Brooks, supra*, 187 Cal.App.3d 657,

a referendum petition failed to include the full text of an exhibit to the ordinance setting forth the legal description of the real property affected. The court held that there had not been substantial compliance with the statutory requirements, "because the petitions fail to apprise prospective signers of the precise location of affected real property to permit them to informatively evaluate whether they should sign the referendum petition challenging the substantive provisions of the ordinance." (*Id.* at p. 664.)[5] Similarly, in *Nelson* v. *Carlson* (1993) 17 Cal.App.4th 732 [21 Cal.Rptr.2d 485], the court held that a referendum petition against a resolution adopting a general plan was defective because the general plan, attached as an exhibit to the resolution, was missing from the referendum petition. "The resolution's focus was on the adoption of the plan and that document was incorporated into it. Without the plan individuals reviewing the petition had no way of informatively evaluating whether to sign it." (*Id.* at p. 739.)

Finally, in *Hayward Area Planning Assn.* v. *Superior Court* (1990) 218 Cal.App.3d 53 [266 Cal.Rptr. 745], the court held that the lack of the statutorily required heading across the top of the referendum petition ("Referendum Against an Ordinance Passed by the City Council") did not render the referendum petition invalid. The court considered the language of the petition (which clearly protested the adoption of a particular resolution and petitioned that it be repealed or submitted to a vote) and stated: "In the referendum petition being considered here, the language of the petition, which appears alone above the signatures, actually furnished all the information to the prospective signers that would have been furnished by the statutory title." (*Id.* at p. 59.) The court concluded that the language of the petition fulfilled the goal of the heading, and therefore substantially complied with the statutory requirement.

In this case, the complete title of the ordinance would have told voters that 2 changes were being made to the general plan designation: for 19.58 acres, a change from commercial to industrial; and for 4 acres, a change from commercial to public/semipublic. The incomplete title, however, failed to provide this information. Voters who relied on the accuracy of the title and failed to read the full text of the Ordinance were *not* clearly informed that the Ordinance allowed for the development of a four-acre park.

Instead, the incomplete title created an ambiguity and numerous possible interpretations concerning the substance of the Ordinance. With the phrase

---

[5]In *Chase*, the petition challenging the zoning ordinance received the required number of signatures and was placed on the ballot. The trial court refused to enjoin the election and the measure passed before the appeal could be heard. While finding the appeal in that case moot, the court concluded that the issues were likely to reoccur and proceeded to resolve them. (187 Cal.App.3d at p. 662.)

"of four acres" omitted, the title could appear to state: (1) that the Ordinance would change the zoning of 19.58 acres from commercial to industrial and an *additional 19.58 acres* from commercial to public/semipublic; (2) that the Ordinance would rezone the *same 19.58 acres* from commercial to *both* industrial and public/semipublic use; (3) that the Ordinance would rezone 19.58 acres from commercial to industrial, but *no acres* from commercial to public/semi-public use; (4) that the Ordinance would rezone 19.58 acres from commercial to industrial use, with some *unknown portion* of those 19.58 acres rezoned from commercial to public/semipublic; or (5) that the Ordinance would rezone 19.58 acres from commercial to industrial use, and an *unknown number of additional acres* from commercial to public/semipublic use. With regard to the fourth and fifth possibilities (with unknown numbers of acres for public/semipublic use), the title could be interpreted to indicate either (a) that the unknown number of acres had been determined by the city council but omitted from the title, or (b) that the unknown number of acres had not yet been determined by the city council.

After consideration of the incomplete title in this case, we agree with the trial court that it created confusion regarding the Ordinance challenged by the referendum petition. As shown above, voters could reach at least five different answers regarding the acres designated for public/semipublic use, and many of these answers would be incorrect. Because the statutory requirement was designed to "reduce confusion as to the contents of referendum petitions," (*Creighton* v. *Reviczky, supra*, 171 Cal.App.3d at p. 1231) the petition sections with the inaccurate Ordinance title did not substantially comply with the requirements of section 9238.

Appellants make numerous arguments that the misstated title did not frustrate the purpose of section 9238. They contend that the incomplete title, which contains no reference to a particular number of acres changed from commercial to public/semipublic, actually says nothing *incorrect* about the number of acres, and thus contains nothing inconsistent with the Ordinance. We disagree. Although the misstated title might be read to state that an *unknown* number of acres was changed from commercial to public/semipublic, there are numerous other possible interpretations of the incomplete title, as discussed above. Many of the possible interpretations (such as 19.58 acres for public/semipublic use) are clearly inconsistent with the Ordinance. Moreover, all of the potential interpretations of the misstated title are significantly less clear, less informative, and more confusing than the correct title.

Appellants also argue that subdivision (b)(1) of section 9238 (requiring "the identifying number or title" of the challenged ordinance) is simply designed to *identify* the ordinance being challenged. They contend that the

title here, although incomplete, fulfilled the statutory purpose of identifying the ordinance at issue, and that the purpose of describing the contents of the ordinance is satisfied by the text, not the title. According to appellants, "[t]o conclude otherwise renders meaningless the separate requirement in Section 9238(b) that a referendum petition contain the text." Appellants also emphasize that the Ordinance adopted numerous policies not included in the title, so that "[a] voter's ignorance of the contents of [the Ordinance] would not have been eliminated if the complete title were present."

Although we agree that the title is not a substitute for the text of the ordinance, and cannot provide the full substantive contents of the ordinance, we are not convinced that the presence of the text somehow cures a title that is materially inaccurate or incomplete. The misstated title here, placed near the top of the page that voters were to sign, was ambiguous and potentially misleading regarding the contents of the Ordinance. This flaw was not cured by the inclusion, on other pages elsewhere in the petition materials, of the complete text of the Ordinance. Nor was it remedied by inclusion of a map, elsewhere in the petition materials, which showed the four acres to be designated as public/semi-public. Voters examining the petition materials simply should not be required to resolve material ambiguities created by an inaccuracy on the petition.

Appellants also argue that a reader of the petition "would have seen a reference to open space and made further inquiries." Although a reader *could* have seen the reference (in the incomplete title) to open space, believed there was an ambiguity, and examined the text to resolve the question, it is the responsibility of the petition proponents to present a petition that conforms to the requirements of the Elections Code. Consistent with the objectives of section 9238, voters should not be required to resolve material ambiguities or to correct inaccuracies in a referendum petition.

Appellants contend that the purpose of the referendum is clear. "There could be no confusion in the minds of persons asked to sign the petition as to its purpose, namely, to rescind the industrial designation of the Drive-In property." They emphasize this statement on the petition: "We, the undersigned, registered voters of the City of Campbell, California, protest that portion of the Ordinance changing the Land Use Designation of 19.58 acres of the former Winchester Drive-in Site to Industrial and petition the City Council to either repeal that portion of the Ordinance or to submit it to the voters as prescribed by law." (Italics omitted.)

Despite the clarity of this statement regarding the petition's goal, it does not correct the inaccurate title above it on the petition. The reader is left to

wonder how the public/semipublic area relates to these 19.58 acres, and what the Ordinance in question actually does. Moreover, the inclusion of a four-acre public/semipublic area (which would have been clear from the accurate title) is certainly relevant to a voter's decision whether to protest the Ordinance by signing the petition.

Appellants argue that the trial court's statement at oral argument that voters would be confused because of the three missing words in the title was "only speculation, and thus must be reversed for a lack of substantial evidence." Appellants emphasize that unlike other cases, there were no declarations in this case from voters asserting that they were confused by the petition.

We recognize that in some cases, courts have considered declarations of voters. (See *Hayward Area Planning Assn.* v. *Superior Court, supra*, 213 Cal.App.3d at p. 60 [voter declaration that she would not have signed the petition if she had known its purpose]; *Creighton* v. *Reviczky, supra*, 171 Cal.App.3d at p. 1233 ["Despite the proponents' claims that they orally advised prospective signers of the ordinance provisions, at least one person sought removal of her name from the petition, alleging she had been misinformed as to its purpose"].)

We are not convinced, however, that such evidence is a prerequisite to a court's determination that a petition fails to substantially comply with statutory requirements. ■ Whether the defective referendum petition complied with section 9238 is essentially a legal issue for determination by the trial court. "Because the question of substantial compliance is one of law, this court need not give deference to the conclusion of the trial court." (*Concerned Citizens of Calaveras County* v. *Board of Supervisors* (1985) 166 Cal.App.3d 90, 96 [212 Cal.Rptr. 273]; *Twain Harte Homeowners Assn.* v. *County of Tuolumne* (1982) 138 Cal.App.3d 664, 674 [188 Cal.Rptr. 233].) In determining substantial compliance, the court's primary task is to evaluate the defect in the petition in light of the Legislature's intent and the values underlying the statute. While the court may consider relevant evidence presented by the parties, we are not persuaded that a party's failure to present a particular kind of evidence (such as voter declarations) deprives the court of the ability to determine the legal issue of substantial compliance. ■ Here, evidence of actual voter confusion was not necessary to the court's determination that the misstated title failed to satisfy the reasonable objectives of the statute.

Finally, appellants argue that doubts should be resolved in favor of the referendum. Although we recognize the importance of the referendum, we

cannot ignore the clear statutes enacted to protect and preserve its exercise. As the court stated in *Chase* v. *Brooks*, *supra*, 187 Cal.App.3d 657, 663, "[a]lthough such statutes should be liberally construed to permit the exercise by the electors of this most important privilege, the statutes designed to protect the elector from confusing or misleading information should be enforced so as to guarantee the integrity of the process."

### III.   DISPOSITION

The judgment is affirmed.

Bamattre-Manoukian, J., and Mihara, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 21, 1998. Mosk, J., Kennard, J., and Brown, J., were of the opinion that the petition should be granted.