[No. A119061. First Dist., Div. One. Oct. 21, 2008.]

DEFEND BAYVIEW HUNTERS POINT COMMITTEE, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

COUNSEL

The Grob Law Firm, Michael A. Grob; Oregonians in Action Legal Center and Ross Day for Plaintiff and Appellant.

Dennis J. Herrera, City Attorney, Therese M. Stewart, Chief Deputy City Attorney, Jonathan Givner and Andrew Shen, Deputy City Attorneys, for Defendants and Respondents.

OPINION

**MARGULIES, J.**—The Defend Bayview Hunters Point Committee (DBHPC) gathered the required number of signatures on a petition to force a

citywide referendum on an ordinance adopting a redevelopment plan for the Bayview Hunters Point community. The City and County of San Francisco (the City) rejected the petition because it failed to include a copy of the 57-page redevelopment plan that had been incorporated by reference in the ordinance when the Board of Supervisors of the City and County of San Francisco voted to approve it. DBHPC's ensuing petition for a writ of mandate compelling the Clerk of the Board of Supervisors (Clerk) to accept the referendum petition was denied by the trial court, and this appeal followed. We affirm the judgment denying DBHPC relief.

## I.  BACKGROUND

### A.  *Facts*

In May 2006, the City approved San Francisco Ordinance No. 113-06, entitled "Ordinance Adopting the Redevelopment Plan For The Bayview Hunters Point Redevelopment Project" (the Ordinance). The Ordinance approved and adopted a redevelopment plan that added nearly 1,400 acres to the previously existing 137-acre Hunters Point redevelopment project area (the Plan). The Plan itself, which was set forth in a 57-page document, was not physically attached to the Ordinance when it was passed, but was kept in a public file in the office of the Clerk, and incorporated by reference into the Ordinance. Section 3 of the Ordinance stated in relevant part, "By this reference, the Redevelopment Plan, a copy of which is on file with the Clerk . . . is incorporated in and made a part of this Ordinance with the same force and effect as though set forth fully herein." The bulk of the 13-page Ordinance consisted of findings that the Plan was consistent with the City's general plan and key planning code provisions, and findings required by the California Community Redevelopment Law (CRL)[1] and California Environmental Quality Act.[2]

Under the CRL, an ordinance adopting or amending a redevelopment plan is subject to referendum if a petition containing signatures of at least 10 percent of the entire vote cast within the City in the last gubernatorial election is submitted to the Clerk within 90 days of the plan's adoption. (Health & Saf. Code, § 33378, subd. (b).) In June 2006, DBHPC began circulating such a petition. The petition included a copy of the Ordinance, but not a copy of the incorporated Plan.

On August 30, 2006, DBHPC filed signed petitions with the Clerk, and the Department of Elections of the City certified a few weeks later that the

[1] Health and Safety Code section 33000 et seq.
[2] Public Resources Code section 21000 et seq.

petitions had a sufficient number of valid signatures. On September 19, 2006, the city attorney issued a written opinion to the Clerk stating that the petition did not comply with section 9238 of the Elections Code[3] because it failed to attach or include any part of the Plan. The City Attorney opined that the failure to include the Plan prevented prospective signers from understanding the substance of the Ordinance or the referendum overturning it, required the Clerk to reject the petition, and precluded the board of supervisors from submitting the petition to the voters for a referendum on the Ordinance. The Clerk thereupon informed DBHPC that she was not accepting the petition.

## B. *Trial Court Proceedings*

DBHPC filed its "Petition for Writ of Mandate or Administrative Mandamus; Complaint for Injunctive and Declaratory Relief" on December 15, 2006. It sought an order and judgment declaring the petition valid and suspending further operation of the Ordinance.

The trial court denied the petition for writ of mandate on June 12, 2007. In its statement of decision, the court described the issue presented as "whether a document 'incorporated by reference' in an ordinance is an essential part of the 'text' of the ordinance within the meaning of California Elections Code § 9238." Under the relevant case law, according to the court, the key factor in construing the "text" requirement of section 9238 is "ensur[ing] that voters receive essential information necessary to make an informed decision." In that regard, whether a document was physically attached to an ordinance at the time of its passage or incorporated into it by reference was immaterial in the court's view.

The court found in this case that the meaning of the Ordinance could not be discerned without reference to the Plan, since a voter reviewing the petition without the Plan would not be aware of, among other things, the boundaries of the redevelopment project, the Plan's restrictions on the use of eminent domain, or the inclusion in the Plan of affordable housing, employment, or community development components. The court also rejected DBHPC's argument that the City should be estopped from rejecting the petition because the Clerk "certified" the text presented to the voters by providing DBHPC with a "certified" copy of the Ordinance that did not attach the Plan.

---

[3] Elections Code section 9238 provides in relevant part as follows: "(a) Across the top of each page of the referendum petition there shall be printed the following: [¶] 'Referendum Against an Ordinance Passed by the City Council' [¶] (b) *Each section of the referendum petition shall contain* (1) the identifying number or title, and (2) *the text of the ordinance or the portion of the ordinance that is the subject of the referendum.*" (Italics added.)

The court entered judgment in favor of the City and this timely appeal followed.

## II. DISCUSSION

DBHPC contends that (1) documents incorporated by reference in an ordinance are not part of its "text" for purposes of Elections Code section 9238, (2) the City's interpretation of section 9238 raises serious First Amendment questions and must therefore be avoided, and (3) the City is estopped from denying the adequacy of the petition.[4]

This case presents only questions of law based on undisputed material facts. Our review of the trial court's decision is therefore de novo. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 544 [35 Cal.Rptr.2d 574].)

A. *Application of the "Text" Requirement*

DBHPC maintains that the trial court arrived at the wrong conclusion by misconstruing the case law interpreting Elections Code section 9238 and similar statutes. We begin by reviewing the relevant case precedents and DBHPC's contentions regarding them.

1. *Relevant Case Law*

*Metropolitan Water Dist. v. Marquardt* (1963) 59 Cal.2d 159 [28 Cal.Rptr. 724, 379 P.2d 28] (*Metropolitan*) involved a challenge to the validity of a statewide water resources bond act that had been passed by the Legislature and submitted to a vote of the people. (*Id.* at pp. 170–171.) The water bond act included a provision, Water Code section 12932, adopting and incorporating by reference the terms of the existing State General Obligation Bond Law (Gov. Code, §§ 16720–16774), which established procedures for the issuance, sale, and repayment of bonds in general. (59 Cal.2d at p. 177.) The ballot pamphlet accompanying submission of the water bond act to the voters did not include the full text of the general bond law despite a provision of the bond law, section 16723 of the Government Code, requiring that any proposed bond act submitted to the voters contain the full text of both the bond act and the general bond law. (59 Cal.2d at pp. 177–178, fn. 6.) As an initial matter the court found that section 16723 was superseded by article

---

[4] A portion of DBHPC's opening brief develops the argument that the Plan will have major adverse impacts on the residents of Bayview Hunters Point and that the ballot box is their "last line of defense" against it. We have taken this as a description of what the DBHPC believes is at stake in the case rather than as a legal or factual contention that, if correct, would be a ground for reversing the trial court's decision.

XVI, section 1 of the California Constitution, which specified that the only requirement for publication was that the " 'complete text of the proposed laws' " be provided in the ballot pamphlet sent to voters. (*Metropolitan*, at p. 177.)

The Supreme Court rejected the opponents' argument that article XVI, section 1 of the California Constitution should also be construed to require inclusion of the general bond law in the ballot pamphlet: "The general bond law was an existing law, not a 'proposed' one, and was not part of the text of the bond act but was merely incorporated by reference. *The meaning of 'text' is the exact written or printed words of a work.* (See Webster's Third New Internat. Dict. (1961) p. 2365; 11 Oxford English Dictionary 1933) p. 238.) The words of the bond act provide for the adoption of the general bond law . . . , but the bond act does not contain the words of the general bond law—it only states that it adopts that law." (*Metropolitan, supra*, 59 Cal.2d at pp. 177–178, italics added.) The court added that leaving the general bond law's text out of the ballot pamphlet would not have had an adverse impact on voters: "[T]he fact that the general bond law is not printed does not deprive the voters of essential information. The general bond law contains only the formal procedure for the issuance, sale, and repayment of bonds, which would not ordinarily be expected to influence the voters in approving or rejecting any particular bond act. The matters which will be of primary interest to the voters, namely, the amount of the bonds authorized to be issued and the purpose for which the proceeds . . . may be used, will be found in each proposed bond act. [Citation.]" (*Id.* at p. 178.)

DBHPC argues that *Metropolitan* is directly on point and in itself requires reversal of the trial court's decision. According to DBHPC, *Metropolitan* stands for the proposition that a document or text merely incorporated by reference in a measure to be voted on by the people is *not* part of the text of the measure. We think that overgeneralizes *Metropolitan*'s holding beyond its peculiar facts. The court was construing the phrase " 'complete text of the *proposed* laws.' " (*Metropolitan, supra*, 59 Cal.2d at p. 177, italics added.) Two facts were critical to the court's decision: First, the omitted material was the text of an *existing* law that would remain on the books whether the water bond act passed or not. Second, the adoption and incorporation of the general bond law into the water bond act was entirely peripheral to the substance and purpose of the latter. The court's conclusion that the general bond law was "not part of the text of the bond act but was merely incorporated [in it] by reference" cannot be divorced from these facts, which formed the underpinning for the court's conclusion that the omission of the bond law's text from the ballot pamphlet would not deprive voters of "essential information." (*Metropolitan, supra*, 59 Cal.2d at pp. 177, 178.) We do not believe *Metropolitan* can fairly be generalized to a fact pattern in which the text incorporated by reference in a measure to be considered by voters or potential

referendum petition signators is of central importance in understanding the purpose and effect of the measure.

*Metropolitan* is the only Supreme Court case cited by the parties construing a "text" requirement analogous to that in Elections Code section 9238. There are several Court of Appeal decisions construing such requirements, however. According to DBHPC, the lesson of these decisions can be summed up as follows: No case has ever held that documents *not physically attached* to ordinances are "text" for purposes of circulating *referendum* petitions. As discussed *post*, we do not share that view of the case law.

■ *Billig v. Voges* (1990) 223 Cal.App.3d 962 [273 Cal.Rptr. 91] (*Billig*) upheld the rejection of a referendum petition that included the full text of the city attorney's summary of a 22-page rezoning ordinance, but left out a portion of the ordinance and two exhibits "which comprise[d] the major portion of the ordinance." (*Id.* at p. 964.) The court found that this violated Elections Code former section 4052, which required that the petition contain the " 'text of the ordinance or the portion of the ordinance which is the subject of the referendum.' " (223 Cal.App.3d at p. 965, fn. & italics omitted.) The court stated: "[B]ecause a referendum petition asks electors to make a decision about their acceptance or nonacceptance of a proposed ordinance, it *requires that voters be fully informed of the substance of the challenged measure* so that the petition reflects the actual, informed will of the people." (*Id.* at p. 967, italics added.)[5]

At issue in *Chase v. Brooks* (1986) 187 Cal.App.3d 657 [232 Cal.Rptr. 65] (*Chase*), was whether a referendum petition was defective under Elections Code former section 4052 for failing to include as part of the "complete text" of an ordinance an exhibit to it containing the full legal description of the affected real property. (*Chase*, at p. 660.) The court held that the petition did not substantially comply with that Elections Code provision "because the petitions fail to apprise prospective signers of the precise location of affected real property to permit them to informatively evaluate whether they should sign the referendum petition challenging the substantive provisions of the ordinance." (*Chase*, at p. 664.) Regarding the practical utility the lengthy legal description would have for potential petition signers, the court stated: "Granted, the metes and bounds legal description within Exhibit 'A' might not improve a prospective signer's ability to determine the

---

[5] Based on its references to the omitted exhibits—containing environmental provisions, findings, and conditions for approval—which it stated were "incorporate[d]" into and comprised a "major portion" of the ordinance (*Billig, supra*, 223 Cal.App.3d at p. 964), it can be inferred that the *Billig* court regarded the exhibits as part of the "text" that must be included in a referendum petition. However, the court's opinion made no express holding in that regard and the recitation of facts in it did not establish whether or not the exhibits were in some manner attached to the ordinance when it passed.

exact and precise location of the affected real property. However, directional references to and from Knoll Road within the description establishes *at least a point of probable common knowledge*. In any event, it provides prospective signers with the entire text of the challenged ordinance containing the legal description, thus *improving the chances prospective signers will not be confused regarding the breadth of the challenged ordinance.*" (*Ibid.*, italics added.)[6]

*Nelson v. Carlson* (1993) 17 Cal.App.4th 732 [21 Cal.Rptr.2d 485] (*Nelson*) involved a fact pattern very similar to that presented here. The city council passed a resolution adopting a land use plan amendment. The fifth paragraph of the resolution stated: " 'The Plan is detailed in Exhibit "B" *attached hereto and incorporated herein by this reference. . . .*' " (*Id.* at p. 735, italics added.) Exhibit B, in turn, was a one-page document stating, " 'Exhibit "B" is the DRAFT GENERAL PLAN and LOCAL COASTAL PROGRAM LAND USE PLAN AMENDMENT dated FEBRUARY 25, 1991.' " (*Id.* at pp. 735–736.) The actual general plan was "several hundred pages long and roughly two and one-half inches thick."[7] (*Id.* at p. 739.) The opponents of the resolution failed to attach a copy of the plan to the petition along with the resolution, and the city clerk refused to certify it for that reason, among others.[8] (17 Cal.App.4th at p. 736.)

Citing *Chase* and *Billig*, the Court of Appeal in *Nelson* sided with the clerk: "The failure to attach to the referendum petition the exhibit containing the plan presents a fatal defect in this case. The resolution's focus was on the adoption of the plan and that document was incorporated into it. Without the plan individuals reviewing the petition had no way of informatively evaluating whether to sign it." (*Nelson, supra*, 17 Cal.App.4th at p. 739.) The court also addressed the objection that inclusion of the lengthy plan document would not have assisted voters: "No case has considered a document as voluminous as the plan considered here. We conclude plaintiffs were required to attach the plan to their referendum petition. This conclusion enforces the express requirements of [Elections Code former] section 4052. As *Billig* noted, the meaning of the term 'text' in section 4052 is clear. By it 'the Legislature intended referendum petitions must contain the exact wording of the challenged measure.' [Citation.] Here, *the plan was the resolution's focal point and was expressly made a part of it.* Section 4052 delineates no exception to

---

[6] Although DBHPC asserts that the opinion in *Chase* shows that "Exhibit 'A' " was incorporated by reference *and* physically attached to the ordinance in issue, the opinion is not clear on that point. However, we will assume for purposes of analysis that DBHPC is correct.

[7] DBHPC claims the opinion shows that the plan itself was attached to the city council resolution when it passed but we do not find that clear from the opinion, since exhibit B was described as a one-page document and the plan was hundreds of pages long.

[8] The court rejected the clerk's other proffered reasons for declining to accept the petition. (*Nelson, supra*, 17 Cal.App.4th at p. 741, fn. 6.)

the requirement that the petition contain the text of the challenged legislation. If the Legislature had wanted to allow an exception for bulky ordinances or resolutions it could have provided for that situation." (*Id.* at p. 740, italics added.)[9]

In *Mervyn's v. Reyes* (1998) 69 Cal.App.4th 93 [81 Cal.Rptr.2d 148] (*Mervyn's*), a department store challenged the validity of an initiative petition adopted by ordinance that changed the land use designation of land owned by the store.[10] Another division of this court held that the petition was invalid for failing to contain the text of the proposed measure. (*Mervyn's*, at pp. 104–105.) The petition referred to, but did not actually contain, the various provisions of the city's general plan that were enacted by the ordinance.[11] (*Mervyn's*, at p. 99.) The court held: "For all the reasons given in the above cited unbroken line of initiative and referendum cases covering the period 1925 to 1998, we find that the petition in the instant case did not substantially comply with Elections Code section 9201. The approximately 17 pages of general plan sections omitted from the petition were the key element of the initiative. Governmental land use decisions can be challenged by initiative or referendum. In either case, *it is imperative that persons evaluating whether to sign the petition be advised which laws are being challenged and which will remain the same. Only inclusion of the existing general plan will accomplish such purpose.*"[12] (*Mervyn's*, at p. 104, italics added, fn. omitted.)

*We Care—Santa Paula v. Herrera* (2006) 139 Cal.App.4th 387 [42 Cal.Rptr.3d 577] (*We Care*) involved an initiative petition to add a provision to a city's general plan requiring that any increase in density for projects involving 81 or more acres be approved by popular vote. (*Id.* at pp. 388–389.) Opponents of the measure argued that the petition was invalid under *Mervyn's* and other cases because it failed to include the text of the general plan. The Court of Appeal disagreed and distinguished the earlier

---

[9] The *Nelson* court also stated: "Attaching the entire plan allows prospective petition signers to consider whether they are comfortable proposing the repeal of such an extensive and important document that is so expensive to prepare." (*Nelson, supra*, 17 Cal.App.4th at p. 740.)

[10] An initiative petition is a proposed ordinance submitted for adoption to a city council after its proponents obtain a predetermined number of voter signatures in support of the proposed ordinance. (See Elec. Code, § 9200 et seq.)

[11] The operative language of the initiative petition stated: " 'The people hereby re-enact the open space land use designations (Parks and Recreation, Baylands, Limited Open Space) of the General Policies Plan Map and the supporting policies in Chapter VII: Open Space, Parks and Recreation, Chapter VIII: Environmental Concerns and Chapter IX: Urban Design of the General Policies Plan of the City of Hayward in effect on January 1, 1996.' " (*Mervyn's, supra*, 69 Cal.App.4th at pp. 96–97.)

[12] DBHPC distinguishes *Mervyn's* primarily on the ground that it involved an initiative petition, not a referendum petition.

cases: "*We Care's petition does not omit the text of an incorporated exhibit or any other portion of the proposed enactment.* Instead, the *petition contains the full and complete text of everything that will be enacted if the voters approve it.* [¶] The city points out that We Care's petition seeks to amend the general plan. It believes this requires that the land use portion of the general plan be included in the petition. But the amendment does not change any land use or density designated in the general plan. Nor does it even purport to prohibit any change in land use or density. It simply adds a provision to the general plan requiring that any increase in density for projects involving 81 or more acres be approved by popular vote. The petition contains the full text of the measure. There is no need to include any portion of the general plan." (*We Care*, at p. 390, italics added.)

### 2. *Analysis*

■ As we analyze the relevant cases, they contain exactly one sentence that is arguably helpful to DBHPC's case—the citation in *Metropolitan* to the dictionary definition of "text" as "the exact . . . printed words of a work." (*Metropolitan, supra*, 59 Cal.2d at pp. 177–178.) But as discussed earlier, the holding in *Metropolitan* cannot fairly be reduced to a 1961 dictionary definition. Instead, the Supreme Court's analysis in the case was rooted in the time-honored principle that in determining the meaning of a word used in a statute, " 'the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in [the word's] interpretation . . . .' " (*People ex rel. S. F. Bay etc. Com. v. Town of Emeryville* (1968) 69 Cal.2d 533, 543, 544 [72 Cal.Rptr. 790, 446 P.2d 790].) A dictionary cannot tell us whether the "text" of an ordinance for purposes of Elections Code section 9238 does or does not include a document that "is incorporated in and made a part of [the ordinance] with the same force and effect as though set forth fully [therein]," and which it was the principal purpose of the ordinance to enact into law.

Notwithstanding dictionary definitions, *Billig*, *Chase*, and *Nelson* all found that exhibits incorporated into ordinances are part of the "text" of the ordinance for referendum petition purposes. Although DBHPC maintains that in all of these cases the exhibit had been physically attached to the ordinance at the time of its passage, the published appellate opinions do not support that generalization. In any event, not a single published opinion has attributed any importance to whether a document incorporated in an ordinance is or is not also physically attached to it when it is passed.

■ Phrased in different ways in the *Metropolitan* opinion, the court's essential inquiry was whether the omitted text provided "essential information," would "ordinarily be expected to influence the voters in approving or

rejecting [a ballot measure]," or addressed subjects that "will be of primary interest to the voters." (*Metropolitan, supra,* 59 Cal.2d at p. 178.) Appellate court cases have required the inclusion of documents incorporated by reference in an ordinance or resolution when the document was necessary to "fully inform[] [the prospective signer] of the substance of the challenged measure" (*Billig, supra,* 223 Cal.App.3d at p. 967), when inclusion of it would "improv[e] the chances prospective signers will not be confused regarding the breadth of the challenged ordinance" (*Chase, supra,* 187 Cal.App.3d at p. 664), when the content of the document "was the resolution's focal point and was expressly made a part of it" (*Nelson, supra,* 17 Cal.App.4th at p. 740), and when it was "imperative that persons evaluating whether to sign the petition be advised which laws are being challenged and which will remain the same" (*Mervyn's, supra,* 69 Cal.App.4th at p. 104). On the other hand, when the petition "contains the full and complete text of everything that will be enacted if the voters approve it," additional materials have not been required to be included in it. (*We Care, supra,* 139 Cal.App.4th at p. 390.) The cases have been equally consistent in holding that lengthy or highly technical documents may not be omitted from the petition if they provide necessary information for prospective signers. (*Chase,* at p. 664; *Nelson,* at p. 740; *Mervyn's,* at p. 104.)

■ Here, the critical text enacted into law by the Ordinance was the text of the Plan, not the printed words of the Ordinance. The Plan supplied vital information about the effect of the Ordinance, including the boundaries of the redevelopment project area, the allowed use of and limitations on eminent domain, the development of affordable housing, the promotion of jobs and business opportunities for local residents, and the community's role in the planning process. The fundamental purpose of the statutory "text" requirement—that voters considering a referendum petition be fully informed about the substance of the challenged measure—compels the conclusion that the petition in this case did not comply with Elections Code section 9238 because the focus and substance of the challenged measure was found in the text of the Plan which, although incorporated by reference in the Ordinance, was not attached to or included in the petition.

DBHPC complains that the "text" requirement as we construe it in this case does not provide a bright enough line. According to DBHPC, it presents a "moving target" that will leave citizens wishing to circulate referendum petitions having to guess at which documents incorporated by reference in or attached to an ordinance must be included in the petition with the risk that—after the petitioners have gone to the trouble and expense of circulating their petition—a court will determine that an omitted document was necessary to understand the challenged ordinance. According to DBHPC, this infirmity is avoided if "text" is construed to mean "the actual language of the

ordinance [not including incorporated text] and any documents [that are] physically attached to [it] at the time [it] is adopted." (Underscoring omitted.)

The problem with DBHPC's proposed definition is that it is underinclusive in relation both to the purpose of Elections Code section 9238, and to the breadth of the statutory phrase "the text of the ordinance" (*id.*, subd. (b)). Ordinances can be drafted in multiple ways. When, as in this case, the purpose of the ordinance is to adopt and enact into law a detailed plan that is many pages in length, incorporation of the plan into the ordinance by reference is a perfectly legal and appropriate way of accomplishing the objective. There is no legal requirement that the plan be physically attached to the ordinance when it passes in order for it to have legal force and effect. While it would undoubtedly make it easier for petition circulators if the text requirement of section 9238 was construed in the narrowest possible sense, such a "one size fits all" rule would ignore one of the common ways that ordinances are drafted and would ultimately frustrate the purpose of the statute.

■ We do not hold here that all documents a local legislative body chooses to incorporate by reference in or attach to an ordinance must be included in a referendum petition. We hold only that when a central purpose of the ordinance is to adopt and enact into law the contents of an incorporated or attached document, a referendum petition on the ordinance does not satisfy Elections Code section 9238 unless it includes a copy of that document.

■ Technical deficiencies in referendum petitions are excused if the form of the petition is in " 'substantial compliance' with statutory and constitutional requirements." (*Hebard v. Bybee* (1998) 65 Cal.App.4th 1331, 1339 [77 Cal.Rptr.2d 352].) Thus, if a petition omits required material that is not essential to understanding the substance of the challenged ordinance, the petition is still valid under the substantial compliance doctrine. (See, e.g., *Hayward Area Planning Assn. v. Superior Court* (1990) 218 Cal.App.3d 53, 56–60 [266 Cal.Rptr. 745].) For the reasons discussed earlier, the omission of the text of the Plan in this case entirely frustrated the purpose of the text requirement in Elections Code section 9238, which is to make sure that prospective signers have adequate information about the substance of a proposed ordinance to make an informed decision about whether to sign the referendum petition. In our view, the petition did not comply either technically or substantially with section 9238.

The Clerk therefore had a ministerial duty to reject the petition.

B. *First Amendment Claim*

DBHPC contends that the Clerk's interpretation of Elections Code section 9238 infringes its First Amendment rights to free speech and to petition the government for redress of grievances.

■ DBHPC's argument fails because Elections Code section 9238 as construed by the trial court does not burden speech. Contrary to DBHPC's unsupported assertion, the court's interpretation would not reduce the pool of available circulators by requiring signature gatherers "to carry with them some 500-plus pages of documents for examination by signers." (Cf. *Buckley v. American Constitutional Law Foundation, Inc.* (1999) 525 U.S. 182 [142 L.Ed.2d 599, 119 S.Ct. 636] [provisions of Colorado law that required circulators to be registered Colorado voters, be identified as " 'PAID' " or " 'VOLUNTEER' " circulators, and required disclosure of their names, addresses, and amounts paid per signature were unconstitutional because they reduced the likely pool of circulators available, thereby significantly inhibiting communication with voters, without being warranted by the state interests alleged to justify them].) Here, there is no evidence in the record that requiring the petition to include the 57-page Plan would have reduced the pool of available circulators. On the other hand, the state's interest in ensuring that prospective signers understand what they are signing fully justifies the requirement that the Plan be included as part of the petition. No alternative arrangement, such as referring interested persons to the City's files, can be an effective substitute for that requirement. Statutes like section 9238 that are designed to give voters information necessary to intelligently exercise their rights are constitutional and enforceable. (See *Billig, supra*, 223 Cal.App.3d at p. 967, fn. 2, citing *Clark v. Jordan* (1936) 7 Cal.2d 248, 250 [60 P.2d 457].)

C. *Estoppel*

DBHPC maintains that the City is estopped from denying the adequacy of its petition because the Clerk allegedly provided DBHPC with the copy of the Ordinance that it attached to the petition, and certified it as "a full, true and correct copy of the original on file in this office." The only evidence DBHPC cites in support of this assertion is a declaration from one of its organizers that has not been made part of the record in this appeal.

■ Error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) The party appealing has the burden of overcoming the presumption of correctness. For this purpose, it must provide an adequate appellate record demonstrating the alleged error. Failure to provide an adequate record on an issue requires that the issue be

resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932].) We therefore reject DBHPC's estoppel argument.

The trial court properly denied DBHPC the relief it sought.

## III.  DISPOSITION

The judgment denying DBHPC's petition for writ of mandate and complaint for injunctive and declaratory relief is affirmed.

Marchiano, P. J., and Swager, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 28, 2009, S168623. George, C. J., did not participate therein.